**Washington C. ALSTON,**
**Plaintiff–Appellee,**

v.

**Scott L. KING, individually and in his professional capacity, Gary Sanitary District, an executive department of the City of Gary, City of Gary, et al., Defendants–Appellants.**

No. 97–3760.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1998.

Decided Oct. 14, 1998.

**1114**

Cora M. Vaughn (argued), Vaughn & Associates, Eric O. Clark, Gary, IN, for Plaintiff–Appellee.

W. Anthony Walker (argued), Meyer, Lyles & Godshalk, Gary, IN, for Defendants–Appellants.

Before EASTERBROOK, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Washington Alston filed this action against Scott King, who is the Mayor of Gary, Indiana, the City of Gary, Indiana, and the Gary Sanitary District (collectively, "the defendants") on February 13, 1996. He alleged claims based upon retaliatory discharge, violation of procedural due process, conspiracy to violate constitutional rights and breach of contract. The district court ultimately entered a judgment for Mr. Alston on the breach of contract claim and on the procedural due process claim. For the reasons set forth in the following opinion, we affirm in part and reverse in part the judgment of the district court.

# I

## BACKGROUND

### A. Facts

In July of 1992, the Gary Sanitary District's Board of Commissioners ("the Board") hired Mr. Alston as Director of the District. Mr. Alston and the Board negotiated an employment contract, which required the District to notify Mr. Alston if it intended to terminate his employment for cause. Under that contract Mr. Alston could request a termination hearing within ten days of that

notice. Although this contract was never signed by the mayor, it was extended several times through 1996.

In January 1996, Scott King, the new mayor of the City, was informed by the Indiana Board of Accounts that an audit by that board had revealed that Mr. Alston had made $18,372.33 in unauthorized expenditures. Mr. Alston also had threatened to cut off the water supply to City Hall and the Gary Public Transportation Center for failure to pay fees.

Mayor King summoned Mr. Alston to his office to answer for these actions. Although Mr. Alston denied any wrongdoing, Mayor King terminated his employment. Mayor King effected this termination without providing Mr. Alston with the notice and the termination hearing required by Mr. Alston's contract. Mr. Alston did not request a hearing, and he refused a name-clearing hearing when he was offered one after he had filed suit.

## B. Proceedings in the District Court

In response to the parties' summary judgment motions, the district court ruled in Mr. Alston's favor on the breach of contract claim; it ruled in the defendants' favor on the defendants' "set-off" affirmative defense to the contract claim, the First Amendment claim and the conspiracy to violate constitutional rights claim.

The parties then tried before a jury the issues of the procedural due process claim and of damages for breach of contract. The jury awarded the plaintiff $40,600 on the breach of contract claim and $92,500 on the procedural due process claim; it also allowed the defendants a $16,857.99 set-off. The defendants now appeal from the judgment entered by the district court with respect to the contract and the due process claims.

1. Indiana Code § 36-9-25-10 provides, in relevant part, that "[i]n performing its duties the board may do the following: ... (15) Employ and pay for all ... professional services needed in carrying out this chapter ...."

2. Indiana Code § 36-9-25-10 provides, in part, that "[i]n performing its duties the board may do the following: ... (14) Enter into contracts in the name of the municipality, with the approval of the executive as provided by law."

## II

## DISCUSSION

### A. The Contract Claim

#### 1.

■ The defendants submit that, under Indiana Code §§ 36-9-25-10(14) and 36-4-5-3(9), contracts entered into by the City are void unless they are signed by the mayor. Because the mayor never signed Mr. Alston's employment contract, the defendants contend that the contract is void. The district court held, however, that the Board had independent authority to hire employees. *See* Ind. Code § 36-9-25-10(15).[1] The district court also noted that the statutes do not require the mayor's signature for the contracts to be valid. The defendants do not contend that Thomas Barnes, the City's mayor at the time the parties entered into the contract, disapproved of Mr. Alston's contract. Indeed, he fully approved. The defendants' argument therefore is purely formalistic: If a contract entered into by the City is to be valid, the mayor must actually affix his signature to it.

We believe that the district court correctly held that Indiana Code § 36-9-25-10(15) provides the Board with independent authority to hire employees like Mr. Alston. Moreover, no Indiana statute states that contracts not signed by the mayor are void, or even voidable at the City's discretion.[2] The Supreme Court of Indiana has indicated, furthermore, that such strict compliance with this requirement of a mayoral signature ought not be required. "The applicable statutes certainly do not preclude the mayor from delegating his duty to sign contracts, and it is impractical to require the mayor to sign every written agreement to which the City is a party." *Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1191 (Ind.1989).[3]

Indiana Code § 36-4-5-3 provides, in part, that "[t]he executive shall: ... (9) sign all bonds, deeds, and contracts of the city and all licenses issued by the city ...."

3. In *Speckman*, a former employee sued the City of Indianapolis, alleging that his termination violated his employment contract with the City. *See* 540 N.E.2d at 1190-91. The City argued that Speckman's contract was invalid because the mayor had not signed it. The Supreme Court of Indiana held that the mayor's signature was not

Although *Speckman* involved a delegation question somewhat different from the one presented by the facts of this case, the defendants present no convincing argument, and no other authority, that might suggest that the Supreme Court of Indiana would reach a contrary result. We therefore hold that the mayor's failure to sign Mr. Alston's contract did not make that contract void or voidable.

### 2.

■ The defendants next contend that the district court incorrectly submitted the set-off affirmative defense to the jury because the district court had already granted summary judgment on that issue.

In the district court, the defendants set forth an affirmative defense that they had a right to a set-off against any compensation they might owe Mr. Alston. This set-off was for the amount Mr. Alston is alleged to have misappropriated from the City. The district court initially granted summary judgment to the defendants on this setoff defense; it held that they were entitled to a set-off of $18,-372.33. Nevertheless, the district court later instructed the jury to determine the amount of the set-off. The jury found that the defendants were entitled only to a $16,857.99 set-off. The defendants now contend that it was error for the district court to submit the matter to the jury after it had been decided on summary judgment.[4]

■ We do not believe that the district court committed reversible error by deciding that the set-off ought to be submitted to the jury. As a general principle of judicial decision-making, the doctrine of the law of the case establishes a presumption that a ruling made at one stage of the proceedings will be adhered to throughout the suit. *See Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). "But it is no more than a presumption, one whose strength varies with the circumstances; it is not a straightjacket." *Avitia v. Metropoli-*

*tan Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir.1995). When a party is not prejudiced by the change, the district court should be allowed to change its ruling. *See id.*

Here, the defendants claim that the district court committed error by submitting the amount of the set-off to the jury. They make no argument as to why the court was wrong in its determination that such a course was appropriate, and, more importantly, no argument that even suggests that the determination of the jury is not supported by the evidence of record. In fact, the defendants did not even object to the district court's decision to give the set-off instruction. Under these circumstances, we shall not disturb the determination of the jury.

### B. The Procedural Due Process Claim

#### 1.

The plaintiff's complaint alleges that the defendants discharged him without affording him an opportunity for a hearing as required by the Supreme Court of the United States in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In *Loudermill,* the Supreme Court held that a proper balancing of the interests as set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), requires that, as a general rule, there be some form of pretermination hearing for an employee who has established that he has a property interest in the retention of his position.[5] In short, the Court reasoned that the general governmental interest in immediate termination of the employee does not outweigh the interests of the employee in retaining his employment and in having an opportunity to present his side of the case. "Even when the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termi-

---

required, in part because the mayor could delegate his authority to sign contracts to the City's corporate counsel. *See id.*

4. Although the defendants' argument on this point is sparse, we do not believe that it is presented so perfunctorily as to be deemed waived. *See* Fed. R. App. P. 28(a)(6).

5. The Court emphasized that its holding was limited to situations in which the employee can assert such a cognizable property interest. *See Loudermill,* 470 U.S. at 543 n. 8, 105 S.Ct. 1487.

nation takes effect." *Loudermill*, 470 U.S. at 543, 105 S.Ct. 1487. In the Court's view, affording the employee such a pretermination hearing imposes neither a significant administrative burden nor an intolerable delay. *See id.* at 544, 105 S.Ct. 1487. Furthermore, noted the Court, the governmental employer shares with the employee an interest in avoiding disruption and erroneous decisions. *See id.* In *Loudermill*, the Supreme Court also emphasized that the pretermination hearing need not be elaborate; the " 'formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' " *Id.* at 545, 105 S.Ct. 1487 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). In general, said the Court, something less than a full evidentiary hearing is sufficient at the pretermination stage. *See id.; see also Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997) (emphasizing that due process is a flexible concept that calls for such procedural protections as the particular situation demands).

■ Despite the general norms set forth above, the Supreme Court also recognized in *Loudermill* that there are instances when there is a significant hazard in keeping the employee on the job which will justify a cessation of his employment activity without the usual pretermination hearing. *See* 470 U.S. at 544–45, 105 S.Ct. 1487. Here, the defendants argue that the nature of the grounds for discharge—financial irregularities and Mr. Alston's threat to shut off the water supply to the Gary Transportation Center and to City Hall—justified the Mayor's termination of Mr. Alston's employment after he gave Mr. Alston an opportunity to explain his actions during their initial meeting. In the defendants' view, the instruction given by the district court did not sufficiently

inform the jury with respect to its obligation to weigh the importance of the City's interest in immediate termination after the meeting.

The district court's refusal to give a jury instruction regarding the government's interest was based on its earlier decision that, as a matter of law, the City's asserted interest could have been accomplished through suspension rather than termination.[6] As the Court stated in *Loudermill*, "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." *Id.*; *see also Domiano v. Village of River Grove*, 904 F.2d 1142, 1149 (7th Cir.1990). A suspension would have satisfied the government's interest in this case.

On the record before us, therefore, we do not believe that the district court's decision to remove this issue from jury consideration substantially prejudiced the defendants. The Supreme Court recently has emphasized that the flexible requirements of due process do not always require a hearing before every adverse employment action. *See Gilbert*, 117 S.Ct. at 1811 (holding that a hearing was not required before a suspension); *cf. Staples v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir.1998) (noting that contemporaneous notice may not always be required before a termination). Here, however, the ultimate sanction at issue was termination and no hearing apparently was contemplated in the period immediately after termination. Under these circumstances, the district court did no violence to *Gilbert* by holding that a suspension rather than a discharge was required until Mr. Alston was afforded a hearing.

**2.**

■ The defendants also submit that the district court improperly instructed the jury on the issue of damages caused by any denial of due process. Procedural due pro-

---

**6.** Because the district court's holding came in the course of rejecting the defendants' motion for a directed verdict, it might seem at first glance that the issue of the government's interest was still part of the case, and therefore still necessary for the jury to consider. However, an examination of the record makes clear that the court's decision denying the defendants' motion was essentially a sua sponte direction of verdict for the plaintiff on that issue, because the court's analy-

sis completely rejected the defendants' contention that the City provided Mr. Alston with all the process due to him. Indeed, the district court affirmatively acknowledged that it had decided the matter. *See* Tr. Vol. 3 at 26; *cf. Best v. District of Columbia*, 291 U.S. 411, 415, 54 S.Ct. 487, 78 L.Ed. 882 (1934) (holding that a court may sua sponte direct a verdict); *American & Foreign Ins. Co. v. General Elec. Co.*, 45 F.3d 135, 139 (6th Cir.1995) (same).

cess damages are those damages that are caused by the denial of the process required by the Constitution. *See Carey v. Piphus*, 435 U.S. 247, 263, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Hessel v. O'Hearn*, 977 F.2d 299, 301–02 (7th Cir.1992).

Here, the district court erroneously instructed the jury in Instruction 20 that, with respect to this procedural due process allegation, the jury could base damages on the termination of employment. Damages should have been based on the consequences of having denied Mr. Alston a hearing before termination.[7] The district court did give another instruction that addressed this general area. The court instructed the jury that Mr. Alston was "only entitled to recover those damages which were actually caused by the defendant's conduct which breached his contract and/or violated his constitutional right to due process." Instructions must be evaluated as a whole. *See BE & K Constr. Co. v. Will & Grundy Counties Bldg. Trades Council*, 156 F.3d 756, 765, 1998 WL 637990, at *10 (7th Cir.1998). We do not believe, however, that this latter instruction, when read after Instruction 20, gave the jury sufficient, and clear, guidance as to the measure of damages. This latter instruction did not cure the error in initially instructing the jury that due process damages should be tied to the discharge rather than to the denial of due process associated with that discharge.

Finally, we cannot say that this erroneous instruction did not affect the jury's verdict. Although the jury had already compensated Mr. Alston for breach of his contract in its award of $40,600 on the breach of contract count, it awarded $92,500 in additional compensation on the procedural due process count. This award suggests strongly that the jury did not understand that its award under this count had to be limited to any additional damages that Mr. Alston might have incurred by his termination immediately after his meeting with the Mayor and that were not included in the award for the breach of the contract.[8] In the absence of such additional damages, any due process violation would result in only nominal damages. *See Carey*, 435 U.S. at 266, 98 S.Ct. 1042.

### Conclusion

The district court's judgment with respect to the award of damages on the contract count is affirmed. The district court correctly determined that the failure of the Mayor to sign the contract did not make the contract void. Nor can we say that the district court's submission of the set-off issue to the jury, despite its earlier decision on summary judgment, constitutes reversible error.

The judgment with respect to the award of damages on the procedural due process claim is reversed. An erroneous jury instruction was given and that error cannot be considered harmless. This count is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs of this appeal.

AFFIRMED in part REVERSED and REMANDED in part.

---

7. The defendants properly noted the nature of their objection to this jury instruction in the record and sought amendment of the instruction to conform to the principles that we have just delineated. The district court declined. Therefore, we cannot accept Mr. Alston's suggestion that the defendants waived this error.

8. We must assume that the jury followed the district court's instructions on the contract count and awarded damages for all the consequences of the breach that the district court determined had occurred.