In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3224

WASHINGTON C. ALSTON,

Plaintiff-Appellant,

v.

SCOTT L. KING, individually,
as Mayor of the City
of Gary, Indiana, and as Special
Administrator of Gary Sanitary
District, OTHO LYLES,
III, individually and as a
member of the Board of
Commissioners of the Gary Sanitary
District, ROLAND ELVAMBUENA,
individually and as a
member of the Board of
Commissioners of the
Gary Sanitary District, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond
Division.
No. 96 C 36--Rudy Lozano, Judge.

Argued May 16, 2000--Decided November 2, 2000

Before EASTERBROOK, RIPPLE, and ROVNER,
Circuit Judges.

ROVNER, Circuit Judge.  This is the
second appeal in this case, and the facts
underlying the case are set forth in
detail in Alston v. King, 157 F.3d 1113
(7th Cir. 1998). We will repeat only
those facts necessary for resolution of
this appeal.

Washington Alston was the Director of
the Gary Sanitary District when Scott
King, the new mayor of Gary, terminated
his employment. Alston then filed an
action against King, the City of Gary,
and the Gary Sanitary District
(collectively referred to as "King")
alleging retaliatory discharge, violation

of procedural due process, conspiracy to violate constitutional rights, and breach of contract. The undisputed evidence established that King had failed to provide Alston with a pretermination hearing as required under the employment contract, and that a suspension prior to the hearing would have protected the City's interest in preventing further harm. The district court therefore entered judgment in favor of Alston on the breach of contract and procedural due process claims, and the jury awarded damages of $40,600 for breach of contract and $92,500 for the procedural due process violation. In the earlier appeal, we reversed the award of damages on the procedural due process count because an erroneous jury instruction was given, and remanded the case for further proceedings. We held that the jury, in awarding damages for the procedural due process violation, did not appear to understand that its award had to be limited to any additional damages that Alston might have incurred as a result of the denial of a pretermination hearing, and that were not included in the award for the breach of contract. Id. at 1118.

On remand, the district court held a trial solely relating to the issue of damages. Prior to that trial, King filed a motion in limine seeking to preclude testimony regarding compensatory damages that were litigated under the contract claim. The motion noted that damages compensable under the contract claim had already been awarded to Alston, and therefore that the evidence must be limited to damages for emotional distress that resulted from the failure to provide a pretermination hearing. The motion specifically sought to exclude the following evidence that had been fully litigated under the contract claim: earnings under the contract; pension benefits; social security income contributions and benefits; and the loss of employability, life insurance, medical, dental and vision benefits, savings, deferred compensation, sick pay, and vacation pay. The motion also sought to prevent testimony regarding physical injuries and conditions not disclosed prior to or during the first trial. The district court tentatively granted the motion, stating: "Motion in limine is granted. And counsel, that does not mean you're going to get it in or not get it

in, you'll have to come to side bar as the evidence presents itself." The court then conducted a trial to determine the procedural due process damages, and Alston presented only his own testimony to establish damages. At the close of Alston's case, King sought judgment as a matter of law awarding only nominal damages. The district court agreed that Alston had failed to prove any damages attributable to the procedural due process violation, and granted judgment as a matter of law, awarding one dollar in nominal damages. Alston appeals that decision, arguing that the district court improperly limited the scope of damages so as to preclude damages arising from the termination itself, and that even given those limitations by the court, he had presented sufficient evidence to avoid judgment as a matter of law. We take these arguments in turn.

I.

Alston contends that by granting King's motion in limine and adhering to that ruling during the trial, the district court improperly limited the scope of the damages to emotional distress caused by the failure to provide a hearing, and excluded damages caused by the improper termination. In addressing this contention, it may be helpful to once again clarify the type of damages that are permissible for a procedural due process violation. As we stated in our prior opinion, a plaintiff who succeeds on a procedural due process claim is entitled to those damages that are caused by the denial of the process required by the Constitution. Id. at 1117-18, citing Carey v. Piphus, 435 U.S. 247, 263 (1978).

The Carey decision clarified the type of damages available for a violation of procedural due process. The Court began by recognizing that the procedural due process clause has the dual purpose of protecting persons from the mistaken or unjustified deprivation of life, liberty or property, and of conveying to the individual a feeling that the government has dealt with her fairly. 435 U.S. at 259, 261-62. Accordingly, damages for a procedural due process violation can include damages for a termination if there is a causal connection between the termination and the failure to provide a

hearing. The converse is true as well; where the employer can prove that the employee would have been terminated even if a proper hearing had been given, the terminated employee cannot receive damages stemming from the termination in an action for a procedural due process violation. Id. at 260. In such a case, the employee may still obtain damages for emotional distress attributable to the deficiencies in procedure if the employee can convince the trier of fact that the distress is attributable to the denial of procedural due process itself rather than to the justified termination. Id. at 263.

Alston argues that the district court denied him the opportunity to establish damages resulting from the termination. Under Carey, such damages are unavailable if the termination would have occurred even if the hearing had been provided. King contends, persuasively, that the undisputed facts establish that Alston would have been terminated for cause because the jury and the court in the first trial found that Alston was responsible for $16,000-$18,000/1 in misappropriated funds. Alston's response is that the evidence demonstrated only improper documentation of funds, not theft of funds. That is irrelevant, however, because Alston presents no evidence that mismanagement of funds under his control would not constitute cause for his termination. Because the undisputed evidence establishes cause for his termination, damages from that termination could not be attributed to the failure to provide a hearing.

Even if we were to recognize a disputed issue of fact regarding the inevitability of the termination decision, the result would be no different in this case because the district court did not in fact exclude evidence relating to thetermination. The motion in limine merely sought to exclude evidence relating to damages litigated in the contract claim and for which Alston had been compensated, and to limit the evidence to damages for emotional distress resulting from the failure to provide a pretermination hearing. That position is fully consistent with Carey and our prior decision in Alston.

Moreover, an inquiry into the court's

rulings during trial reveals the same conclusion. Because the ruling on the motion in limine was tentative, we must examine the particular evidentiary rulings made during the trial. See Wilson v. Williams, 182 F.3d 562, 565-66 (7th Cir. 1999) (when court's ruling on a motion in limine is tentative, litigant must raise it during trial in order to preserve the issue). Alston asserts that as a result of the court's restrictions on evidence relating to the termination, he was prevented from presenting evidence regarding: his employment contract; his humiliation immediately after being terminated; his feelings about not receiving a name-clearing hearing; his ability to obtain other employment; the video of the press conference held after the termination; the damage to his reputation; his removal from the Black History Month program; his beliefs as to why his termination was unjustified; and his ability to use his educational degrees after termination. The transcript reveals, however, that without exception those evidentiary rulings were the result of Alston's failure to properly present that evidence, and were unrelated to any opinion by the court regarding the propriety of damages for the termination.

For instance, the district court precluded testimony regarding damage to his reputation, his removal from the Black History program, and his inability to use his educational degrees because in each case Alston's testimony was based upon hearsay and not his own personal knowledge. The court did not rule that such evidence was irrelevant, only that it was not admissible through hearsay testimony. Alston chose not to call the individuals who could have properly presented such evidence, such as the person who decided to remove him from the Black History program or individuals who refused to offer him a job.

Similarly, testimony regarding the press conference was ultimately excluded because Alston failed to tie it to any damages. Prevalent throughout the transcript are repeated instances in which Alston failed to lay a proper foundation for testimony, or attempted to introduce testimony that called for speculation or was based on hearsay. For instance, some testimony about how he

felt at not receiving a name-clearing hearing was excluded for lack of foundation and because it was speculative. Another predominant problem was Alston's proclivity for testifying in the narrative rather than confining his answers to the question before him. His testimony regarding the humiliation he suffered immediately after being terminated was stricken because it was provided in an ongoing narrative directly after the court had issued three warnings that such testimony was improper, the last of which directed that such testimony would be stricken if it continued. Alston's counsel did not then ask further questions to properly introduce that testimony. The court excluded testimony regarding Alston's employment contract because he was introducing it to show that the contract called for arbitration, which was not relevant to the issue of damages given that the due process violation was already established. Finally, Alston asserts that the court excluded testimony of his beliefs as to why the termination was unjustified. That is an inaccurate characterization of the record. The court in fact allowed testimony on that matter, repeatedly overruling King's objections. That line of questioning was restricted only when Alston attempted to introduce hearsay testimony.

Thus, although significant limitations were ultimately placed on the testimony, those restrictions were a result of Alston's failure to rely on competent, admissible testimony to make his case for damages. King's objections were undoubtedly distracting in their sheer volume and repetition, but Alston consistently failed to adhere to basic principles of evidence in eliciting the testimony. We find no support in the record for Alston's contention that the district court improperly excluded damages evidence relating to the termination.

II.

Alston nevertheless argues that despite the court's adverse evidentiary rulings, he submitted sufficient evidence of damages to avoid judgment as a matter of law. The evidence relating to emotional distress that was admitted at the trial is sparse. We have Alston's bare

testimony that as a result of being denied a hearing, he suffered "humiliation, embarrassment, stress [and] rejection." We also have his testimony that the deprivation of a hearing caused him to become depressed, that he had a tendency to abuse alcohol, and that it materially affected the quality of his relationship with the woman he was dating and that he was no longer engaged to her. On cross-examination, however, Alston was confronted with inconsistent trial testimony of October 20, 1997, and he then acknowledged that he was not abusing alcohol and had never sought professional counseling. He also acknowledged that he first became engaged to the woman in question more than a year after the termination.

Alston also presented some testimony regarding the circumstances surrounding the termination. He testified that after King terminated him, he was escorted by another person to his former office to remove his personal effects. He further testified that employees were gathered around and some were crying, some were mocking or laughing at him, and others were befuddled.

When the injured party provides the only evidence of emotional distress, he must reasonably and sufficiently explain the circumstances of the injury rather than relying on mere conclusory statements. Biggs v. Village of Dupo, 892 F.2d 1298, 1304 (7th Cir. 1990), citing Rakovich v. Wade, 819 F.2d 1393, 1399 n.6 (7th Cir. 1987), vacated on reh. en banc on other grounds, 850 F.2d 1180 (1988). Moreover, "we require that a plaintiff show 'demonstrable emotional distress,' not just point to circumstances of the constitutional violation which might support an inference of such injury." Biggs, 802 F.2d at 1305, quoting Rakovich, 819 F.2d at 1399 (emphasis in original). We have previously held insufficient statements by a plaintiff that he is "depressed, a little despondent, or even completely humiliated," Biggs, 892 F.2d at 1305, but the sufficiency of such statements ultimately depends upon the particular facts of the case. As this court clarified in United States v. Balistrieri, 981 F.2d 916, 932 (7th Cir. 1992), an injured person's testimony may, by itself or in conjunction with the

circumstances of a given case, be sufficient to establish emotional distress without more. Balistrieri set forth certain factors relevant to determining when such evidence will suffice, as follows:

[I]n determining whether the evidence of emotional distress is sufficient to support an award of damages, we must look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused the distress. . . . The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action; consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award of emotional distress.

Id. [citations omitted]. The act that allegedly caused the distress in this case is the denial of the hearing, not the termination itself. That is not the type of inherently degrading conduct that would portend emotional distress. See, e.g., Balistrieri, 981 F.2d at 932 (recognizing that racial discrimination, one of the "relics of slavery," is the type of conduct that is reasonably expected to cause emotional distress). Therefore, Alston's bare allegations of humiliation would not, without more, preclude judgment as a matter of law.

Therefore, we must examine the more specific testimony of emotional distress provided by Alston, to determine whether it is sufficient to raise a jury issue. Alston testified to alcohol abuse and the demise of his engagement, but that testimony was contradicted by Alston himself on cross-examination, when he acknowledged that as of the first trial, he suffered no alcohol abuse and that he did not even become engaged until over a year after the termination. Alston introduced no testimony from which a finder of fact could attribute the subsequent alcohol and relationship problems as a long-delayed reaction to the denial of the hearing. Accordingly, that testimony provides no basis for a jury to conclude that he suffered damages in the form of emotional distress from the failure to provide the hearing.

Alston also testified, however, as to

the sequence of events at the office that occurred immediately after he was informed of his termination. According to that testimony, Alston was escorted by "a police officer or someone that the Mayor directed" to take him to his District. Once there, he was taken to his former office and he removed his personal effects. In the meantime, employees were gathered around, and some were crying, others were befuddled, and still others were mocking or laughing at him. That testimony is sufficient to raise a jury issue of emotional distress damages related to the denial of procedural due process. The portrayal of the incident certainly gives credence to his claim of feeling humiliated and suffering emotional distress, particularly the allegation of co-workers laughing and mocking him as he cleaned out his desk. Moreover, a reasonable juror could conclude that the humiliating office scene would not have occurred if Alston had not been summarily terminated. For instance, a jury could conclude that if he was suspended pending a hearing, he would not have been immediately taken back to his desk and forced to clean out his desk in the presence of his co-workers, without any explanation. Although he may have had to clear out his desk eventually after the hearing, we cannot say that the humiliation would have been the same given the opportunity for the other employees to at least have learned what was happening in the interim, and possibly given the potential for him to choose a less visible time to accomplish the task. In other words, there was enough evidence to infer that the humiliation he experienced was attributable to the summary nature of the proceedings, rather than to the termination itself. Alston therefore presented sufficient evidence of damages to withstand judgment as a matter of law.

Accordingly, the district court erred in granting judgment as a matter of law and awarding only nominal damages. The decision of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

/1   The district court initially determined on summary judgment that Alston was responsible for

a set-off of $18,372.33 for funds misappropriated by him from the City. The issue was later submitted to the jury, which held Alston responsible for a $16,857.99 set-off.