**David L. SPECKMAN, Appellant (Plaintiff Below),**

v.

**CITY OF INDIANAPOLIS, Appellee (Defendant Below).**

No. 49S04–8907–CV–516.

Supreme Court of Indiana.

July 6, 1989.

Richard A. Waples, Indianapolis, for appellant.

Gary W. Bippus, Asst. Corp. Counsel, City–County Legal Div., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant David Speckman contends that the City of Indianapolis violated federal due process by discharging him without holding a hearing. The Court of Appeals held that the trial court's dismissal of Speckman's claims was improper. Because Speckman states a cognizable contract claim to his job, we agree.

David Speckman worked for the Indianapolis Department of Parks and Recreation. He was originally discharged on December 19, 1979. The City executed a settlement agreement with Speckman on March 17, 1981. Speckman agreed to release the City from all claims of wrongful discharge in exchange for the City's agreement to reinstate him, to pay him for damages and accrued leave time, and to treat him in accordance with the City of Indianapolis Personnel Policies and Procedure Manual.

Speckman was reinstated as of March 17, 1981, and subsequently promoted to the position of director of Brookside Park. While Speckman was on vacation from December 5 through December 22, 1981, his assistant Barry Owens rented Brookside Center to a group from R.C.A. without obtaining a permit. Owens gave the R.C.A. group a receipt for $88.00 but failed to deposit the fees he received for the rental. The City gave Owens the option of resigning or being prosecuted. On January 29, 1982, Owens resigned.

On February 17, 1982, Speckman voluntarily paid the fee because he and Owens were friends and Owens still feared he would be prosecuted. Five days later, Speckman was presented a disciplinary report which discharged him immediately. According to the City, the paperwork necessary to terminate Speckman was presented to him so that he could acknowledge it with his signature. He refused to sign but received a copy of the employee disciplinary report. The report indicated that Speckman was discharged for "unlawful or negligent handling of public monies." Following Speckman's discharge, employees of the City made statements to the press and to other City employees indicating that Speckman had been dishonest or even criminal in his handling of the funds. The press disseminated those statements to the general public.

Speckman filed a wrongful discharge action against the City. As amended, his complaint alleged:

Count I: The City discharged Speckman in a manner that was defamatory and contrary to public policy.

Count II: The City breached its written contract of employment with Speckman.

Count III: The City's failure to give Speckman a pre-termination hearing deprived him of his property interest in continued employment and his due process rights under the Fourteenth Amendment.

Count IV: The City's failure to provide a pre-termination hearing deprived Speckman of his liberty interest in his good name and reputation and his due process rights under the Fourteenth Amendment.

Under Trial Rule 12(B)(6), Ind. Rules of Procedure, the City moved to dismiss counts II, III, and IV for failure to state a claim upon which relief could be granted. The trial court granted the City's motion to dismiss those counts. Speckman voluntarily dismissed count I so that the order dismissing the other counts would become final and appealable.

Speckman appealed the trial court's dismissal of counts II, III, and IV, arguing that each stated a cause of action. The Court of Appeals ordered each count reinstated, concluding that "Speckman's complaint alleged sufficient facts (1) to establish he had a valid, enforceable employment contract, (2) to establish that he was not an at-will employee, and (3) to survive the City's 12(B)(6) motion." *Speckman v. City of Indianapolis* (1987), Ind.App., 508 N.E. 2d 1336, 1337. Development of Indiana law would be advanced by a decision rendered in this Court, so we grant the City's petition to transfer.

### I. *City's Contract Contentions*

▮▮▮ The City contends that the Court of Appeals erred in finding a valid contract between Speckman and the City. The City claims that the opinion of the Court of Appeals conflicts with existing precedent insofar as it allows a contract to be formed with a municipality absent strict compliance with the applicable statutes. The City contends that the mayor must sign all contracts.[1] As a corollary of this claim, the City contends that the Corporation Counsel did not have the authority to sign a contract binding the City. The City also argues that the Court of Appeals erroneously decided a new question by holding that officers and agents with apparent authority may bind the City.

We conclude these claims are without merit. The applicable statutes certainly do not preclude the mayor from delegating his duty to sign contracts, and it is impractical to require the mayor to sign every single written agreement to which the City is a party. The act creating the corporation counsel is sufficiently broad to permit the mayor to delegate authority to that person. Ind.Code § 36-3-5-2 (Burns 1981 Repl.). Furthermore, counsel for the City are estopped from presenting arguments concerning the ability of the Corporation Counsel to bind the City in light of the representation which the Corporation Counsel made in the text of the agreement itself: "The legal division, City of Indianapolis, has reviewed the foregoing consent agreement and finds it to be proper in all respects." (Record at 24).

The City further claims that the Court of Appeals erroneously decided a new question of law by expanding the definition of "executed consideration" to support an employment contract by including the release of claims for intentional torts such as defamation. We presume this refers to the independent consideration found to support the contract, and discuss it in section II below.

### II. *Speckman's Claims*

▮▮▮ Speckman's complaint contains three claimed grounds for relief which we address in turn: a contract claim, a property interest, and a liberty interest.

---

1. Under Ind.Code § 18-1-6-2 (Burns 1974) (current version at Ind.Code § 36-4-5-3 (Burns 1981 Repl.)) the mayor had the duty to sign all written contracts. Though this section was repealed effective September 1, 1981, it still governs this case because the agreement between Speckman and the City was executed before the section was removed from the statute. 1980 Ind. Acts 212 §§ 10(c), 13.

*A. Contract Claim.* As a general rule, Indiana employment relationships are terminable at the will of either party. If an employee gives independent consideration for an employment contract, however, the employer may terminate the employee only for good cause without incurring liability for its action. *Ohio Table Pad Co. of Indiana, Inc. v. Hogan* (1981), Ind.App., 424 N.E.2d 144. An example of independent consideration is an employee's assignment of a valuable coal lease to the employer in return for employment. *Mt. Pleasant Coal Co. v. Watts* (1926), 91 Ind.App. 501, 151 N.E. 7.

■ Independent consideration to support a contract of permanent employment also exists when an employee surrenders or releases a claim for personal injuries sustained at the hands of the contract employer. *Ohio Table Pad,* 424 N.E.2d at 146. Under the agreement between Speckman and the City, Speckman agreed to release all claims of wrongful discharge he had against the City.

■ The City contends that prior to this case sources of independent consideration for an employment contract were limited to the kinds recognized in *Mt. Pleasant Coal* and *Ohio Table Pad.* The City contends that the Court of Appeals erred in expanding the definition of "executed consideration" to include the release of intentional torts such as defamation, which could be committed by employees acting outside of the course and scope of their employment.

The City's contention is not persuasive because an employer receives the same benefit if an employee releases it from liability in either case. In both instances the employer bargains for an immunity from legal process for an act already committed. Speckman's settlement agreement provides independent consideration by releasing the City from a tort claim.

The presumption that employment is at will can also be rebutted by an agreement between the employer and the employee. *Department of Natural Resources v. Evans* (1986), Ind.App., 493 N.E.2d 1295. Evans was involved in litigation over the "Two Percent Club," a method of monetary contribution by public employees to the political party with power over their employment. Parties to the suit negotiated a settlement in which Evans agreed to release D.N.R. in exchange for a non-retaliation agreement. Evans then tried to get a job with D.N.R. but was not given political clearance. Evans sued based on the non-retaliation clause of the settlement agreement. The Court of Appeals upheld an award of damages for lost wages because of breach of the agreement. It found that if Evans had been hired by the Department, she would not have been a true at-will employee because her employment would have been conditioned by the settlement contract. If hired, the Department could have discharged Evans at anytime without liability *only if* the Department did not violate the settlement contract in doing so. *Id.* at 1302.

■ Similarly, in its settlement agreement with Speckman, the City agreed to treat Speckman in accordance with the City of Indianapolis Personnel Policies and Procedure Manual. That manual requires "just cause" be established before any disciplinary action is taken against an employee. Thus, Speckman's employment was not at will, but rather was conditioned by the settlement agreement.

■ While there is room to debate the scope of the rights afforded Speckman under the contract, such contracts are valid and enforceable. Speckman had stated a claim on which relief might be granted, subject to proper proof. Accordingly, count II of his complaint was not subject to dismissal under Trial Rule 12(B)(6), Ind. Rules of Procedure.

■ *B. Property Interest.* Count III of Speckman's complaint alleged that the City terminated him in violation of the fourteenth amendment by failing to afford him a hearing before his discharge. A pre-termination hearing is required only if an employee has a protected property or liberty interest in his or her employment. Speckman claims he has a property interest in his job which is protected by federal procedural due process.

■ A property interest may arise from a statute, ordinance, or contract. The U.S. Supreme Court has said:

> To have a property interest in a benefit [such as a job] a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). In *Roth* the Supreme Court held that property interests are not created by the U.S. Constitution, but rather by existing rules or understandings that stem from an independent source such as state law. *Id.* Once a property interest in a civil service job is created by the legislature, the constitutional right to due process attaches. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). However, the Court recognized the right of a state legislature to choose whether or not to create a property interest in civil service jobs.

■ Speckman does not have a federal due process right to a hearing merely because he is a public employee. Speckman's only claim to a due process right flows from the potential entitlement to continued employment that may exist by virtue of his written employment contract. The trial court must be allowed to determine if Speckman's particular contract created a legitimate claim of entitlement to continued employment, and whether or not the City's actions were in violation of the contract. A finding in favor of Speckman on that issue would give vitality to his due process claim.

The City might have sought summary judgment on count III by accepting count II for the sake of argument and attempting to demonstrate that Speckman had been afforded due process adequate under the circumstances. It chose instead to seek dismissal of count III. Because the motion to dismiss the contract claim should not have been granted, it was also improper to dismiss the property interest claim, count III.

■ *C. Liberty Interest.* Speckman argues that he had a liberty interest, protected by the fourteenth amendment, in his good name and reputation and was therefore entitled to an opportunity to clear his name at a pre-termination hearing. The Court of Appeals determined that Speckman has a cognizable claim to a liberty interest precluding dismissal under Trial Rule 12(B)(6), Ind. Rules of Procedure. It held that Speckman was entitled to the opportunity to prove the legitimacy of his claim to federal due process protection. We agree.

The U.S. Supreme Court held, "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515, 519 (1971). The Court has said that the phrase "because of what the government is doing to him," refers to a "governmental action ... [which] deprived the individual of a right previously held under state law ..." *Paul v. Davis*, 424 U.S. 693, 708, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405, 418 (1976). Speckman claims to be deprived of the right to continued employment under his employment contract.

An employee must receive an opportunity to prove his claim of entitlement to continued employment under certain circumstances. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Sindermann was discharged from his position as a college professor. The Court held that Sindermann's lack of a formal contract or tenure agreement was not determinative of his right to procedural due process. The Court acknowledged that Sindermann had not yet shown that he was "deprived of an interest that could invoke procedural due process protection" but the Court nonetheless held that he "must be given an opportunity to prove the legitimacy of his claim of such entitlement ..." 408 U.S. at 599, 603, 92 S.Ct. at 2698, 2700, 33 L.Ed.2d at 578, 580.

Under *Sindermann* an employee need not establish the actual existence of a prop-

erty or liberty interest to get a hearing on his due process claims, but merely has to raise a genuine issue as to his interest in continued employment. Speckman must be allowed to present more evidence on his contract claim before the court can determine whether there is a genuine issue as to his claim of a liberty interest.

In the companion case to *Sindermann*, the Supreme Court stated that a person who is not rehired in one job, but remains as free as before to seek another job is not deprived of a liberty interest. *Board of Regents v. Roth*, 408 U.S. at 575, 92 S.Ct. at 2708, 33 L.Ed.2d at 560 (Roth not deprived of a liberty interest merely because his teaching contract was not renewed). The Court noted that mere proof that an employee's record of nonretention in one job might make him somewhat less attractive to some other employers does not establish the kind of foreclosure of opportunities amounting to a deprivation of liberty. *Id.* at 574 n. 13, 92 S.Ct. at 2707 n. 13, 33 L.Ed.2d at 559 n. 13.[2]

Defamation alone is not a deprivation of liberty. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The Court implies that if the government defames an individual in connection with a refusal to rehire then an action might arise under the fourteenth amendment.[3] However, that does not establish that every firing automatically triggers a deprivation of liberty.

In *Bishop v. Wood*, Bishop claimed that he was deprived of liberty because the reasons given for his discharge were false, and because the reasons were so serious as to cause stigma and possible damage to his reputation. The Supreme Court refused to recognize a violation of Bishop's liberty interest because there was no public disclosure of the reasons for which Bishop was fired. To hold otherwise, Justice Stevens wrote, would discourage "forthright and truthful communications between employer and employee" and would "enable every discharged employee to assert a constitutional claim ..." 426 U.S. 341, 349, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684, 692–93 (1976).

Justice Stevens closed the opinion in *Bishop* with this admonition:

In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

426 U.S. at 350, 96 S.Ct. at 2080, 48 L.Ed.2d at 693.

A similar principle was described in *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136 (7th Cir.1984):

[W]hen a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action the same way, and insists that due process be provided.

*Id.* at 1139. The Seventh Circuit found a due process action for invasion of a liberty

---

2. In dicta, the Supreme Court acknowledged that there might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated:

The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case.... In such a

case, due process would accord an opportunity to refute the charge before University officials.

*Roth*, 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed. 2d at 558 (citations omitted).

3. An example of this principle in a discharge case is *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (city council resolution impugning police chief's honesty held a possible fourteenth amendment violation).

interest to be inappropriate for Lawson. They decided that "while she may have been defamed by the statements that the sheriff made in explanation of why he had fired her, the interest that is invaded by defamation ... is not "property" or "liberty" within the meaning of the due process clause." *Id.* at 1138.

These cases lead us to the conclusion that the trial court must examine the facts surrounding Speckman's discharge, and determine if the City's alleged defamation of Speckman was so maligning as to foreclose Speckman from continuing in the same occupation and to damage his standing in the community.

### III. *What Due Process May Require*

Once the right to federal due process protection for a property or liberty interest is established, a question remains as to what procedures fulfill the due process requirement. This Court once said that due process requires "notice in some proper form and an opportunity to be heard before some tribunal, not necessarily a court or before a jury." *Town of Walkerton v. New York, Chicago and St. Louis Railroad Co.* (1939), 215 Ind. 206, 214, 18 N.E. 2d 799, 803, *cert. denied,* 308 U.S. 556, 60 S.Ct. 75, 84 L.Ed. 467. When protected interests are implicated, *Roth* suggests the extent of process required is "notice and opportunity for hearing *appropriate to the nature of the case....*" *Roth,* 408 U.S. at 570, 92 S.Ct. at 2705, 33 L.Ed.2d at 556 n. 7 (emphasis added) (quoting *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90, 96 (1971)). Thus, the City could obviate counts III and IV by establishing that the process given to Speckman was adequate under the circumstances.

### IV. *Conclusion*

The federal right to due process before being deprived of those interests is grounded on state recognition of the interests at stake. Because Speckman did establish a right to be heard on his contract claim under the standard of Trial Rule 12(B)(6), his other claims stand as well.

We reinstate counts II, III, and IV, noting that there might be other grounds for dismissal of the federal claims which have yet to be presented.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.