167 F.3d 347
 Cora M. VAUGHN, Vaughn and Associates, P.C., and Reginald
Marcus, Plaintiffs-Appellees,
v.
Scott L. KING, individually and as mayor of the City of Gary
and as special administrator of the Gary Sanitary District,
Gary Sanitary District, an executive department of the City
of Gary, City of Gary, Defendants-Appellants.
 Nos. 97-3458, 97-3494.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 14, 1998.
Decided Jan. 29, 1999.
 
 Bessie M. Taylor (argued), Eric O. Clark, Gary, IN, for Plaintiffs-Appellents.
 James B. Meyer (argued), Monica S. Morris, W. Anthony Walker, Meyer, Lyles & Godshalk, Gary, IN, for Defendants-Appellees.
 Before EASTERBROOK, RIPPLE and ROVNER, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Cora Vaughn, her law partner, Reginald Marcus, and her law firm, Vaughn and Associates, P.C. (collectively, the plaintiffs), filed this action against Scott King, the current mayor of Gary, Indiana, the Gary Sanitary District and the City of Gary (collectively, the defendants). The plaintiffs alleged that the defendants had breached several contracts by failing to pay for legal services. The plaintiffs also alleged that, by failing to provide the plaintiffs with any process prior to refusing to pay for the legal services, the defendants had violated rights secured by the Fourteenth Amendment to the Constitution of the United States. Finally, the plaintiffs claimed that the defendants' politically motivated termination of the professional services contracts had violated First Amendment rights. A supplemental state contract claim was also pleaded.
 
 
 2
 The district court first granted summary judgment to the defendants on the First Amendment claim. In a later order, the district court dismissed sua sponte the plaintiffs' Fourteenth Amendment claim. The remaining state contract claim was tried before a jury and a general verdict for the plaintiffs in the amount of $181,956.98 was returned. The plaintiffs and the defendants now appeal. For the reasons set forth in the following opinion, we affirm the judgment of the district court.
 
 
 3
 * BACKGROUND
 
 A. Facts
 
 4
 Beginning in 1992, the Gary Sanitary District ("the District") awarded the plaintiffs contracts for general legal services and for collection services. At first, Ms. Vaughn contracted with the District to perform general legal services. Later that year, her law partner, Mr. Marcus, signed a contract to collect money owed to the District. The parties extended these contracts on several occasions. Then-mayor Thomas Barnes did not sign the contracts; the parties agree, however, that he fully approved of them.
 
 
 5
 When Mayor Barnes stepped down, the plaintiffs supported a candidate other than the victor, Scott King. The defendants allege that, shortly after Mr. King's election, the Board declared the contracts void. The plaintiffs contend that the City voided only the general legal services contract, but did not void the collection contract.
 
 B. Proceedings in the District Court
 1.
 
 6
 In ruling on the parties' motions for summary judgment, the district court rejected the defendants' argument that the contracts were void because then-Mayor Barnes had not signed them. With respect to the legal services contract, the court determined that there was no issue of material fact as to the amount owed, and the court therefore concluded that the plaintiffs were entitled to judgment for $75,900.72.
 
 
 7
 In the course of discussing the collection services contract, the district court stated that the plaintiffs were entitled to 25% of all fees collected by the District through the plaintiffs' efforts. The court also rejected the defendants' contention that, because the plaintiffs were lawyers whose employment was terminated, all damages under this contract were limited to a quantum meruit recovery. The court nevertheless held that the plaintiffs had not established that all of the debtors' payments to the District were a result of the plaintiffs' collection efforts; and therefore summary judgment was inappropriate on that issue.
 
 
 8
 Finally, the district court granted the defendants' summary judgment motion on the First Amendment claim; it held that "an independent contractor providing legal services for a municipal entity, where the entity is the client of the attorney, is in a confidential position from which he or she can be dismissed for political considerations." R.44 at 22.
 
 2.
 
 9
 On the remaining issues, a jury returned a general verdict of $181,956.98 in favor of the plaintiffs. This was substantially less than the $1.5 million in compensatory damages the plaintiffs were seeking. The district court then denied the plaintiffs' motions for judgment as a matter of law and for a new trial. The court held that there was sufficient evidence to support the jury's verdict. Even if the amounts collected were undisputed, noted the court, the jury would have been justified in determining that the collection services contract had been terminated and was not ongoing at trial or that the contract had been obtained under undue influence. The jury also could have found, continued the district court, that the plaintiffs had not sought to collect the attorneys' fees from the debtors and therefore were entitled only to payment for the time expended in making these collections.
 
 
 10
 The district court also rejected the plaintiffs' argument that it had erred in allowing the jury to interpret the contract's compensation terms. The court disagreed with the plaintiffs' submission that there was nothing for the jury to decide because those terms unambiguously provide that the plaintiffs are entitled to 25% of all funds that were paid to the Board due to the plaintiffs' efforts. It also rejected the claim that the court's summary judgment order already had settled this issue by interpreting the contract to mean that the plaintiffs are entitled to 25% of the amount the City collected through the plaintiffs' efforts. In the district court's view, the collections contract was ambiguous regarding the amount the plaintiffs should be paid; the prior summary judgment order was conclusive only as to issues presented in the summary judgment motion. Similarly, the court rejected the plaintiffs' contention that, because the court had found the contracts valid in its earlier order, it could not instruct the jury that the collection services contract may be invalid because of undue influence. The court reasoned that other issues of contract validity, not the issue of undue influence, had been at issue in the summary judgment order.
 
 II
 DISCUSSION
 A. The Contract Claim
 1.
 
 11
 The defendants submit that, under Indiana Code §§ 36-9-25-10(14) and 36-4-5-3(9),[1] contracts entered into by the City are void unless they are signed by the mayor. Because the mayor never signed the contracts, the defendants submit, the contracts are void, and the plaintiffs may recover only damages in quantum meruit.
 
 
 12
 We cannot accept this argument for two reasons. First, we believe that the district court was on solid ground in holding that the Board had independent authority to hire outside counsel. Indiana Code § 36-9-25-10(15) gives the Board authority to "employ" lawyers and other professionals.[2] We believe that this provision includes authority to hire independent contractors.[3] The use of the verb "employ" does not indicate that that section refers only to formal employment, as opposed to contractual, relationships.
 
 
 13
 More fundamentally, as we have noted recently in Alston v. King, 157 F.3d 1113, 1115-16 (7th Cir.1998), Indiana law does not require, in unambiguous terms, the mayor's signature for the contracts to be valid. Indeed, no Indiana statute states that contracts not signed by the mayor are void, or even voidable at the City's discretion. The Supreme Court of Indiana has indicated that such a formalistic compliance with this requirement of a mayoral signature is not necessary. "The applicable statutes certainly do not preclude the mayor from delegating his duty to sign contracts, and it is impractical to require the mayor to sign every written agreement to which the City is a party." Speckman v. City of Indianapolis, 540 N.E.2d 1189, 1191 (Ind.1989).[4] Although Speckman involved a delegation question somewhat different from the one presented by the facts of this case, the defendants present no convincing argument and no other authority that might suggest that the Supreme Court of Indiana would reach a contrary result. We therefore hold that the mayor's failure to sign the plaintiffs' contracts did not make those contracts void or voidable. Notably, the defendants do not contend that Thomas Barnes, the City's mayor at the time the parties entered into the contract, disapproved of the contracts. Indeed, he fully approved. The defendants' argument is purely formalistic: If a contract entered into by the City is to be valid, the mayor must actually affix his signature to it. As we held in Alston, 157 F.3d at 1115-16, we do not believe that the law of Indiana requires such an unrealistic result.
 
 2.
 
 14
 Under Indiana law, contracts entered into between an attorney and client while the attorney-client relationship exists are presumptively invalid as the product of undue influence. See Lutz v. Belli, 516 N.E.2d 95, 97 (Ind.Ct.App.1987). The attorney must establish the fairness of the transaction and show that the compensation arrangement under the contract does not exceed fair and reasonable remuneration for the services.
 
 
 15
 The district court instructed the jury that, if it found undue influence, it also should find the contract invalid. The plaintiffs submit that it was error to submit the undue influence issue to the jury. They first submit that undue influence is an affirmative defense under Federal Rule of Civil Procedure 8(c),[5] and that the defendants therefore waived the defense by not pleading it.
 
 
 16
 The question whether undue influence ought to be considered an affirmative defense under Rule 8(c) is a difficult one. Although the defense is not among those specifically listed in the Rule, it is similar to duress, which is listed. Moreover, the law of this circuit is unclear as to whether, in a diversity case, a defense not listed in Rule 8(c) and on which the plaintiff bears the burden of proof under state law must be pled by a defendant. See Brunswick Leasing Corp. v. Wisconsin Central Ltd., 136 F.3d 521, 530 (7th Cir.1998) (discussing the various approaches taken by courts). However, we need not resolve that issue in this case; the pretrial order placed the parties on notice that undue influence was an issue for trial. Pretrial orders supersede the pleadings. See Wilson v. Kelkhoff, 86 F.3d 1438, 1442 (7th Cir.1996); Erff v. MarkHon Indus., Inc., 781 F.2d 613, 617 (7th Cir.1986); see also Fed.R.Civ.P. 16(e). Because the issue of undue influence was presented in the pretrial order, the plaintiffs' claim that they were unfairly surprised by the submission of the issue to the jury is without merit, and it cannot be said that the defendants waived reliance upon it.
 
 
 17
 The plaintiffs next argue that there was insufficient evidence in the record to warrant submitting the issue of undue influence to the jury. Our review of the record convinces us that there is no merit to this contention. Ms. Vaughn was the primary lawyer for the City when her partner, Mr. Marcus, entered into the collection contract with the City, and Ms. Vaughn spoke in support of the collection contract at the board meeting. Indiana law presumes undue influence when an attorney and her client enter into a contract during the period of the attorney-client relationship; the jury was entitled to conclude that Ms. Vaughn exercised such influence over the decision to contract with her law partner for collection services.
 
 3.
 
 18
 The district court instructed the jury to determine whether the collection services contract had been terminated. The plaintiffs argue that it was error to submit this issue to the jury because there was no evidence in the record to support the conclusion that the Board terminated the collection services contract.
 
 
 19
 The plaintiffs' contention lacks merit. The minutes of the Board's meetings reflect that the Board terminated both Ms. Vaughn's general legal services contract and Mr. Marcus' collection contract, albeit at different meetings. Indeed, the pretrial order indicates that the termination of the collection services contract was an established fact.4.
 
 
 20
 The district court instructed the jury to interpret the collection contract on the issue of the amount of payment due to the plaintiffs. The plaintiffs contend that the court erred in allowing the jury to interpret the contract clauses because the contract unambiguously required that the plaintiffs be paid 25% of any money the City received as a result of the plaintiffs' efforts.
 
 
 21
 We cannot accept the plaintiffs' argument. First of all, the plaintiffs did not object to the instruction in the jury instruction conference; therefore the objection is waived. See Stachniak v. Hayes, 989 F.2d 914, 920 (7th Cir.1993). Additionally, the claim has no merit. Article III of the contract states that the plaintiffs should be paid 25% of all money collected. Article IV states, however, that the plaintiffs must submit itemized invoices of its billable hours if they do not collect fees directly from the debtor. Reading the two clauses together, we believe that the parties may have intended that the plaintiffs should receive 25% of the collections only if they collect them directly from debtors and should receive an hourly rate otherwise.
 
 5.
 
 22
 Finally, the plaintiffs submit that the district court improperly excluded certain evidence. We review the evidentiary rulings of the district court under an abuse of discretion standard. See BE & K Constr. Co. v. Will & Grundy Counties Bldg. Trades Council, 156 F.3d 756, 763 (7th Cir.1998).
 
 
 23
 We note at the outset that the plaintiffs cite parts of the record and argue, without any analysis, that the district court erred in excluding certain evidence. The plaintiffs' arguments with respect to these issues are so cursory that they are waived. We shall limit our discussion to those evidentiary issues that have been developed adequately in the appellate brief.
 
 
 24
 The plaintiffs submit that the district court erred in excluding testimony by a board member regarding his understanding of how Ms. Vaughn was to be paid under the collection contract. We do not believe that this matter was preserved adequately for appellate review. During a sidebar discussion of the matter, the district court indicated that it was inclined to exclude the evidence on the ground that the contract terms were controlling. Because the court had ruled that the collections contract was ambiguous as to how much the plaintiffs should be paid, we have difficulty in understanding the district court's remarks. However, although the court's remarks quite obviously invited a further response from counsel, the attorney elected not to pursue the matter.[6] On this record, therefore, the matter was not preserved adequately for appellate review. Moreover, because counsel did not indicate the specific testimony that he planned to elicit, we cannot evaluate how the testimony, if admitted, would have affected the jury's verdict. The plaintiffs claim that the witness' answer would have been relevant to the issues of undue influence and contract interpretation, but do not reveal what the witness would have said.
 
 
 25
 The plaintiffs also argue that the court should have admitted testimony about conversations between the plaintiffs' representatives and the City's representatives regarding negotiation and implementation of the contract. In one instance, the plaintiffs' counsel sought to ask Ms. Vaughn why the collection contract was called a special services contract. The court did not allow her to testify as to what the City's negotiators had said because the court thought that such testimony would be hearsay. The court's ruling on this matter is obscure. Any error, however, was harmless. Although the plaintiffs argue that Ms. Vaughn's answer would have been relevant to the issues of undue influence and the contract's interpretation, we are never told what Ms. Vaughn would have said, or how the jury's interpretation of the contract would have been affected. It is not the responsibility of this court to make arguments for the parties. See United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.), cert. denied, 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).
 
 
 26
 The plaintiffs also object to the court's refusal to admit statements made by Ms. Vaughn prior to trial. Our examination of the record leaves it less than clear that there is an adequate factual foundation for this contention. In any event, the district court properly refused to admit those statements because a witness' testimony as to her own prior out-of-court statement is generally hearsay. See Kenneth S. Brown et al., McCormick on Evidence, § 251 at 744-46 (1984). Ms. Vaughn makes no other argument that would place these statements within a hearsay exception.
 
 
 27
 The plaintiffs finally argue that the district court erred in not allowing them to lead adverse witnesses. We do not believe that the district court's handling of this matter affected the outcome of this case.
 
 B. The Procedural Due Process Claim[7]
 
 28
 In the complaint, the plaintiffs allege that the defendants "violated the Fifth and Fourteenth Amendments to the U.S. Constitution when they failed to afford plaintiffs their due process rights prior to refusing to pay the attorney fees" and that "[d]efendants further violated plaintiffs' property interests when they terminated plaintiffs' collection contracts without due process." Amended Complaint p 21. The district court dismissed this claim sua sponte. It held that the right to litigate a contract claim is all the process that is due a typical contract claimant. The plaintiffs submit that they were not given an opportunity to respond to this dismissal. However, the record indicates that the court gave the plaintiffs an opportunity to respond in a hearing and offered to reconsider the issue if they could make a better argument later. We believe that the court afforded the plaintiffs an adequate opportunity to be heard.
 
 
 29
 Courts generally should not grant summary judgment sua sponte. See Sawyer v. United States, 831 F.2d 755, 759 (7th Cir.1987). Such a course is permissible, however, "when the outcome is clear, so long as the opposing party has had an adequate opportunity to respond." Id. The plaintiffs clearly had an opportunity to respond. Moreover, the outcome of the due process claim was clear because the plaintiffs had already been provided all the process due to them. This court has held that all the process due to a typical contract claimant is the right to litigate their contract claim in court. See Mid-American Waste Systems, Inc. v. City of Gary, 49 F.3d 286, 291 (7th Cir.1995). Therefore, the plaintiffs have no claim against the defendants for not providing more process before terminating their contracts.
 
 C. The First Amendment Claim
 
 30
 The plaintiffs argue that their First Amendment rights were violated when their independent contractor position was terminated for political reasons. The district court held that the plaintiffs, as attorneys, were in a confidential position which could be terminated under the test articulated in Elrod v. Burns, 427 U.S. 347, 372, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The plaintiffs argue that this court should hold that the confidential workers exception does not apply to independent contractors.
 
 
 31
 We have no authority to accept the plaintiffs' suggestion. The Supreme Court has held that the Elrod framework, which includes the confidential employee rule, applies to independent contractors. See O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 720-26, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996). Indeed, this court recently stated in dictum that the confidential employee rule applies to independent contractors. See Milazzo v. O'Connell, 108 F.3d 129, 132 (1997), cert. denied, --- U.S. ----, 119 S.Ct. 619, 142 L.Ed.2d 559 (1998).
 
 Conclusion
 
 32
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 Indiana Code § 36-9-25-10 provides, in part, that "[i]n performing its duties the board may do the following:... (14) Enter into contracts in the name of the municipality, with the approval of the executive as provided by law."
 Indiana Code § 36-4-5-3 provides, in part, that "[t]he executive shall:... (9) sign all bonds, deeds, and contracts of the city and all licenses issued by the city ...."
 
 
 [2]
 Indiana Code § 36-9-25-10 provides, in relevant part, that "[i]n performing its duties the board may do the following:... (15) Employ and pay for all ... professional services needed in carrying out this chapter ...."
 
 
 [3]
 This conclusion also rebuts the defendants' argument that the contract was void because it was not signed by the City's corporation counsel pursuant to Indiana Code § 36-4-9-12. Because the Board possessed authority to employ outside counsel, it was not required to obtain the signature of either the mayor or the corporation counsel
 
 
 [4]
 In Speckman, a former employee sued the City of Indianapolis, alleging that his termination violated his employment contract with the City. See 540 N.E.2d at 1190-91. The City argued that Speckman's contract was invalid because the mayor had not signed it. The Supreme Court of Indiana held that the mayor's signature was not required, in part because the mayor could delegate his authority to sign contracts to the City's corporate counsel. See id
 
 
 [5]
 Federal Rule of Civil Procedure 8(c) provides in part:
 In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.
 
 
 [6]
 Q: Based on your understanding, how was Cora Vaughn to be paid under the contract for collections?
 MR. MEYER: I'm going to object unless he can establish a foundation that he actually read the contracts.
 THE COURT: Counsel. (Side bar discussion.)
 MR. COOPER: Judge, I know you're tired of us. Please be patient, your Honor.
 THE COURT: What I'm thinking about, Counsel, is you're asking for his understanding on the discussion as to how it was to be paid.
 Doesn't the contract control? Don't you have the--there's a contract here. What difference does it make what they talked about? Isn't the contract what's controlling?
 MR. COOPER: Yes, sir, but there's been so much discussion about--
 THE COURT: Counsel, I can't make objections for everybody. I try to stay out of your litigation as much as I can. Sometimes you gentlemen force me into it.
 MR. COOPER: Let me see if I can skip around some of that, your Honor.
 THE COURT: Okay. (End of side bar discussion.)
 THE COURT: Sustained.
 Tr. 357-58.
 
 
 [7]
 The plaintiffs argue that their procedural and substantive due process rights have been violated. We deal here only with their procedural due process claims. The plaintiffs have blended their substantive due process claim with their First Amendment claim; we therefore deal with that issue in the discussion of the First Amendment issue