

**FILED**

Feb 29 2016, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Wayne E. Uhl
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Eric A. Frey
Frey Law Firm
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Town of West Terre Haute,
Indiana,

*Appellant-Defendant,*

v.

Jody Roach,

*Appellee-Plaintiff.*

February 29, 2016

Court of Appeals Case No.
84A01-1503-CT-106

Appeal from the Vigo Superior
Court.
The Honorable J. Blaine Akers,
Special Judge.
Cause No. 84D06-1306-CT-5193

**Shepard, Senior Judge**

[1] The Town of West Terre Haute discharged its employee Jody Roach in the course of addressing an audit of the Clerk-Treasurer's office. The trial court hearing Roach's suit against the Town and other government actors granted summary judgment to all defendants except the Town, which now appeals. We reverse and remand.

# Issues

The two issues presented in this appeal follow.

> I. Does the Town's failure to hold a pre-termination hearing support Roach's claim for money damages?
>
> II. Is the Town entitled to summary judgment on Roach's defamation claim?

# Facts and Procedural History

Roach was an at-will employee of the Town in the office of the elected Clerk-Treasurer, Melody Buchanan. She served as a utility clerk, and thus handled the payment of public funds, including water bill payments. Roach received funds from utility customers, put the cash or check in a drawer, issued the customer a receipt, kept a copy, and posted the payment to each customer's account. She also filled out deposit slips and carried deposits to the bank. Vickie Ashburn, the deputy clerk-treasurer, occasionally handled deposits when Roach was busy with other duties.

The State Board of Accounts conducted one of its periodic audits in early 2011, covering 2009-2010. In about April 2011, field examiners Laura Ping and Katie Elliott informed the town council president, Scott McClain, and Buchanan that their preliminary investigation revealed missing funds and that they would conduct further review. On June 28, 2011, McClain arrived at the town office to meet with SBOA representatives about the audit. Looking out the window, he saw police cars and officers accompanied by Ping and Elliott. Officers escorted Buchanan, Ashburn, and Roach from the building and served McClain

with search warrants authorizing the officers to take papers from the office. McClain collected and surrendered all keys to the office.

[5] The Attorney General obtained a temporary restraining order seeking prejudgment attachment and garnishment from Roach and the two others. The request for the TRO alleged that, according to a preliminary report of SBOA, Roach "wrongfully or negligently failed to properly account for, expend, and/or deposit the funds of the Town, or otherwise committed several acts of misfeasance, malfeasance, and nonfeasance which resulted in the misappropriation or diversion of public funds." Appellant's Appendix at 161. The Town's loss was estimated at over $360,000. A deputy state examiner's affidavit in support of the TRO said the Town's general ledger was materially short, with short deposits on twenty-one of twenty-two days examined and that only Buchanan, Ashburn, and Roach had access to the funds. On July 22, 2011, the court entered an agreed injunction freezing Roach's real property and vehicles and restricted her spending to no more than $1200 per month.

[6] In addition to the civil action brought by the Attorney General, Ashburn was later arrested and charged with theft and RICO violations, eventually pleading guilty to two counts of Class D felony theft. Roach and Buchanan were not arrested or charged.

[7] The Attorney General issued a press release announcing the civil action to freeze the assets of Buchanan, Ashburn, and Roach, while the investigation was ongoing. He also noted that if SBOA issued a certified audit, he would proceed

against the three to recover stolen funds in the civil action. The press release also referenced the criminal charges against Ashburn. Local news articles mentioned the civil proceeding against the three and the criminal charges against Ashburn.

[8] Town council members issued a statement to which they referred the media:

> It is our understanding that an investigation has been ongoing for some time by the State Board of Accounts and the Indiana State Police.
>
> The Town Board is and has been cooperating with the said investigation. We as the Town Board are anxiously awaiting the results of the said investigation. And will act accordingly at the time to protect the citizens of the Town of West Terre Haute.
>
> Town Board Members

*Id.* at 227.

[9] President McClain also participated in a news conference with Vigo County Prosecutor Terry Modesitt. Statements attributable to McClain in media reports covered only the logistics involved in the receipt of customers' payments of utility bills.

[10] Because Buchanan, Ashburn, and Roach were not permitted to enter the town office, it was effectively closed for about a week. Arrangements were made with local banks to receive utility payments, and customers were advised to continue to make payments.

To address those staffing problems, McClain approached local resident Jim Mann, who agreed to step in as deputy clerk-treasurer. Ashburn's employment was terminated in order to pay Mann for his services. Buchanan's salary could not be used to pay other salaries because she was an elected official still holding office. The Town continued to pay Roach's salary even though she was barred from the office.

The town council voted to terminate Roach's employment on August 5, 2011, in order to pay Ron Stevens, a person identified as being qualified to help Mann conduct the Town's business. The council's minutes recording that vote also said, "The reason for the termination will be revealed during the upcoming trial of Vickie Ashburn, Jody Roach and Melody Buchanan." *Id.* at 274. A letter advising Roach of the termination was sent that same day.

On August 11, 2011, McClain and Buchanan attended an exit conference with SBOA to review the final results of the audit. For the period 2007 through 2011, the auditors identified some $371,800 as missing for which Buchanan and Ashburn were jointly liable. None of the missing funds were attributable to Roach. However, auditors did find evidence that Roach had cashed personal checks from money paid by customers on more than one occasion. Roach's personal checks were deposited as part of the utility receipts. Roach acknowledged that this had occurred. McClain signed a Corrective Action Plan, which was made part of the audit, and included the fact of Roach's termination on August 5, 2011.

[14]  SBOA's final audits found that Roach "bypassed the internal controls" by removing cash from utility receipts and replacing them with personal checks. *Id.* at 277.  Only Ashburn was found to have stolen funds.  The prejudgment garnishment of Roach's assets was dissolved, she was dismissed from the AG's civil action, and no criminal charges were filed against her.  Media reports stated that Roach was no longer part of the audit and that the Attorney General was not proceeding against her.

[15]  Roach filed a complaint on June 7, 2013, against the State of Indiana, the SBOA, and the Town, alleging defamation/false light, negligence, malicious prosecution of a civil action, and wrongful discharge and damage to reputation, and seeking damages.  The parties stipulated that the complaint did not assert any claim under the Constitution or laws of the United States.

[16]  The State, the SBOA, and the Town moved for summary judgment.  After a hearing, the trial court entered orders denying the Town's motion, but granting the State's and the SBOA's.

[17]  Roach has not appealed from the orders in favor of the State and the SBOA, but could still do so when all matters are concluded.  The Town moved to certify the trial court's order against it for interlocutory appeal.  The court granted the motion, and we accepted jurisdiction.

# Discussion and Decision

## Standard of Review

[18] Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact with respect to a particular claim or element of a claim. Ind. Trial Rule 56(C); *Woodruff v. Ind. Family & Soc. Servs.*, 964 N.E.2d 784, 790 (Ind. 2012). Once the moving party has met its burden, the non-moving party must come forward with properly designated evidence affirmatively demonstrating a genuine issue of material fact. *Id.* All evidence and reasonable inferences are construed in favor of the non-moving party. *Id.*

[19] On appellate review, we conduct *de novo* review of disputes where the facts are uncontroverted. *Id.* If the law has been incorrectly applied to the facts, we reverse. *Id.* If not, we will affirm a grant or denial of summary judgment upon any theory supported by evidence in the record. *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009).

## I. Pre-Termination Hearing

[20] Roach alleges that the Town's failure to hold a pre-termination or name-clearing hearing supports her claim for money damages.

[21] As the parties stipulated that no federal grounds were being asserted, Roach's argument is based on Article I, Section 12 of our state constitution:

> All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without

purchase; completely, and without denial; speedily, and without delay.

[22] Although the analysis of claims under the due process clause of the federal constitution and Indiana's due course of law clause have been conflated in the past, recent cases note the significant differences between them. *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 975-76 (Ind. 2000). Section 12 requires courts to be open to claims based on rules of law derived either from common law or prescribed by statute. *Id.* at 979. "If the law provides no remedy, Section 12 does not require that there be one," said the Supreme Court. *Id.*

[23] In *Cantrell v. Morris*, 849 N.E.2d 488, 499 (Ind. 2006), the Court noted: "Article I, Section 12 does not specify any particular remedy for any particular wrong." *Id.* The definition of wrongs and specification of remedies is left to the legislature and the common law. *Id.* Under Section 12, the courts must be open for individuals to litigate claims based on rules of law. Indiana case law construing the Open Courts Clause does not support the notion that it creates a substantive right of action.

[24] In this respect, Indiana reflects the historic reasons why state constitutions contain open courts provisions. In the years running up to the American Revolution, colonials saw acts interfering with court operation by royal governors and other representatives of the Crown as a tool of repression. These acts ran all the way up to literally causing the courts to be "closed" rather than

"open" for civil litigation. Such was the experience during the struggle over the Stamp Act. [1]

[25] It was these episodes, especially in colonies such as Delaware and Massachussetts, that led to open courts provisions, the first of which was adopted by Delaware in 1776. These clauses sought to assure an independent judiciary that could administer justice without interference, according to substantive sources such as common law or statutes. [2]

[26] "As a general rule, Indiana employment relationships are terminable at the will of either party." *Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1192 (Ind. 1989). Roach was an at-will employee, and Section 12 does not provide a specific remedy for violations of state constitutional rights. Thus, her claim that the Town's failure to hold a pre-termination hearing supports her claim for money damages fails. The trial court erred by denying the Town summary judgment on this point.

## II.  Defamation

[27] Roach's defamation claim, by contrast, invokes established grounds of common law.

---

[1] The Blackwell Encyclopedia of the American Revolution 117 (Jack P. Greene & J.R. Pole eds., 1991).

[2] Jonathan M. Hoffman, By the Course of the Law:  The Origins of the Open Courts Clause of State Constitutions, 74 Or. L. Rev. 1279 (1995).

[28] "A defamatory communication is one that tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009). Whether a communication is defamatory is a question of law for the court, unless the communication is susceptible to either a defamatory or a non-defamatory interpretation. *Id.* In that event, the matter may be submitted to the jury. *Id.* "Any statement actionable for defamation must not only be defamatory in nature, but false." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006).

[29] Defamation can be defamatory *per se* or defamatory *per quod*. *Id.* Defamation *per se* involves a communication imputing: "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Baker*, 917 N.E.2d at 657. The communication must be made with malice, publication, and damage. *Id.* The plaintiff is entitled to presumed damages as a natural and probable consequence of defamation *per se*. *Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007). This is so because the words imputing one of those conditions are so naturally and obviously harmful that one need not prove their injurious character. *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1230 (Ind. Ct. App. 2005). The defamatory nature of the communication must appear without reference to extrinsic facts or circumstances. *Id.* A person alleging defamation *per quod* must demonstrate the same elements without reference to extrinsic facts or circumstances, but must additionally demonstrate special damages. *Id.*

[30] A plaintiff must include the alleged defamatory statement in the complaint. *Trail*, 845 N.E.2d at 136. Roach's complaint alleges that the actions of the SBOA were false and defamatory because they placed her in a false light by accusing her of a crime, specifically embezzlement. The complaint then alleges that the Town terminated her employment immediately after SBOA's preliminary audit results were shared with the town council. No specific defamatory statement by the Town is included in Roach's complaint.

[31] In support of Roach's position as respects summary judgment, counsel cites news articles reporting on a press conference or conferences attended by town board president McClain during which the allegations against Buchanan, Ashburn, and Roach were discussed. The only reported comments attributable to board president McClain involved his explanation of a new utility meter reading system, where to make payments while the utility office was closed, and assurances that the Town was financially sound.

[32] Roach also argues that McClain did not speak up about Roach's substantial exoneration by the final audit during a news conference he attended. Further, she claims that she was defamed when a Corrective Action Plan, signed by McClain, in which the only references to Roach were that she and Buchanan had disregarded controls over payment receipts by substituting personal checks in place of cash received from customers was published. The plan also mentioned Roach's termination on August 5, 2011. Last, Roach cites the town council minutes from the meeting at which Roach was terminated ("reason for

the termination will be revealed during the upcoming trial of Vickie Ashburn, Jody Roach, and Melody Buchanan.") Appellant's Appendix at 274.

[33] Roach agrees that none of the statements attributed to the Town were false. A defamation claim must be premised on a defamatory statement that is false. McClain denied making a defamatory statement about Roach and denied hearing anyone else associated with the Town make defamatory statements against her.

[34] Roach is unable to identify a defamatory statement made by the Town. Instead, she claims that McClain's failure to say anything, his presence at news conferences where the allegations were discussed, and the termination of her employment prior to her exoneration, amount to defamation.

[35] As our Supreme Court said in *Trail*, "this allegation does not actually assert, nor relate to, any actionable defamatory statement. Rather, the allegation merely refers to the speculative effect the defendants' non-actionable silence has had on Trail's reputation. It would be an odd use of the defamation doctrine to hold that silence constitutes actionable speech." 845 N.E.2d at 137.

[36] Roach's case differs in this respect from *Glasscock v. Corliss*, 823 N.E.2d 748 (Ind. Ct. App. 2005), *trans. denied*. The defamatory statements were that Corliss had been fired because of discrepancies in her expense reports and that she had bought gifts for her family and friends. The only fair inference was that Corliss had committed misconduct by purchasing gifts for her family with company funds, thereby constituting a defamatory communication. 823 N.E.2d at 753.

[37] We agree with the Town that there is no genuine issue of material fact precluding summary judgment in its favor. The court erred by denying the Town's motion on this point.

# Conclusion

[38] In light of the foregoing, we reverse the decision of the trial court and remand with instructions to grant the Town's motion for summary judgment.

[39] Reversed and remanded.

Riley, J., and Robb, J., concur.