571 N.E.2d 282 (1991)
Thomas S. BOCHNOWSKI, Appellant,
v.
PEOPLES FEDERAL Savings & Loan Association, David A. Bochnowski, President, Chief Executive Officer and Director; William L. Kennedy, Director; Harold G. Rueth, Director; Leroy A. Cataldi, Director; Gloria C. Gray, Director; Lourdes M. Dennison, Director; John J. Wadas, Jr., Director; Appellees.
No. 64S04-9105-CV-369.
Supreme Court of Indiana.
May 16, 1991.
Robert E. Stochel, O'Drobinak, Stochel & Austgen, P.C., Crown Point, for appellant.
Mark A. Lienhoop, Leon R. Kaminski, Newby, Lewis, Kaminski & Jones, LaPorte, Steven A. Johnson, Spangler, Jennings, Spangler & Daugherty, Merrillville, for appellees.

ON PETITION FOR TRANSFER
DeBRULER, Judge.
This cause comes to us on a petition to transfer from the First District Court of Appeals. The issue presented is whether a cause of action for tortious interference with an employment relationship can be maintained upon a contract terminable at will. The trial court below granted appellees' Motion for Summary Judgment stating that the evidence presented to the court demonstrated that there was no genuine issue of material fact and that appellant *283 had failed to state a valid claim against Peoples Federal Savings and Loan Association. A divided Court of Appeals affirmed. Bochnowski v. Peoples Federal Sav. (1988), Ind. App., 530 N.E.2d 125 (Ratliff, J., dissenting). For the reasons set forth below, we now grant transfer and reverse.
Appellant Thomas Bochnowski left his employment with Peoples Service Agency, a subsidiary of Peoples Federal Savings and Loan Association, in the fall of 1981. Appellant had worked in the area of real estate appraisal, but because Peoples Service was phasing out its real estate appraisal activities, appellant was working predominantly in the area of insurance. In order to get back into the real estate appraisal business, appellant went to work for Vernon Lee of Vernon Lee and Associates. In March of 1982, appellant's brother, Michael Bochnowski, left Peoples Service and started his own insurance and real estate appraisal business called Bochnowski Agency, Inc. The two brothers were partners in this agency.
In May of 1982, David Bochnowski, President of Peoples Service Agency, Chief Executive Officer and Director of Peoples Federal, and a cousin to appellant and Michael, wrote a letter to Vernon Lee informing Lee of appellant's involvement in the Bochnowski Agency. Peoples Federal relied upon Vernon Lee to do a good deal of its real estate appraisal work. As a condition of his employment with Lee and Associates, appellant had agreed not to accept any outside appraisal work. David Bochnowski's letter informed Vernon Lee that Peoples Federal would terminate its relationship with Lee and Associates unless it received Lee's personal assurance that appellant would not be involved in any way with appraisals assigned by Peoples Federal to Lee and Associates. David Bochnowski feared that because appellant had access as an appraiser for Lee and Associates to Peoples' customer lists, he would be able to utilize these lists to steal insurance clients from Peoples for the Bochnowski Agency. Lee and David Bochnowski temporarily resolved this issue through an agreement whereby Lee agreed that appellant would no longer be allowed to do any appraisal work involving Peoples Federal. Nonetheless, in the spring of 1982, Peoples Service Agency initiated litigation against appellant.
Lee would occasionally inquire as to the status of this litigation involving appellant. In December of 1983, David Bochnowski urged Lee to do whatever he could do to get the parties together to resolve the dispute. Subsequently, at Lee's suggestion, the parties to this litigation held two meetings in early January of 1984 in an effort to settle this matter. At the conclusion of these meetings, all parties were optimistic that a settlement had been reached and that only minor details and legal formalities remained. Appellant reported this to Lee and asserted that an agreement had been reached and its final conclusion was imminent. On June 29, 1984, however, David Bochnowski wrote a letter to Lee in which he stated that a settlement had not been reached. In this letter, David also asserted that appellant was again doing Peoples Federal appraisal work in violation of their agreement.
This letter prompted a meeting between Lee, appellant and David Bochnowski. At the conclusion of this meeting, an exasparated Vernon Lee issued an ultimatum to appellant. Lee informed appellant that he had two options: He could resolve the matter by settling the litigation with Peoples Federal or he could terminate his employment with Lee and Associates. Lee gave appellant two weeks to make his decision. The result was that at the end of this two-week period, Lee and appellant severed their employment relationship.
In September of 1984, appellant filed suit against Peoples Federal Savings and Loan Association alleging damages of ten million dollars. Appellant's complaint asserts that Peoples Federal maliciously conspired to bring about his discharge from Vernon Lee and Associates. Appellant maintains that while the Peoples Savings Agency suit against appellant was pending, David Bochnowski kept in constant contact with Vernon Lee and threatened Lee with the loss of business and other unknown sanctions unless appellant settled the litigation. *284 Appellant alleges that as a result of these malicious and coercive acts, he was discharged from his employment with Lee and Associates.
On September 15, 1987, the trial court granted Peoples Federal's second motion for summary judgment and dismissed appellant's claim. The trial court found that none of the material in the record supported appellant's claim against Peoples Federal or its individual board of directors.
The Court of Appeals affirmed the trial court's order granting summary judgment. The court stated that an action for tortious interference with a contractual relationship cannot be maintained in Indiana without a valid and enforceable contract and that a contract terminable at will cannot form the basis of an action for interference with a contractual relationship. Bochnowski, 530 N.E.2d at 126 (citing Stanley v. Kelley (1981), Ind. App., 422 N.E.2d 663). The Court found that appellant failed to show that he had a contract of employment upon which to maintain his cause of action as he was an employee at will. Id.
Appellant now brings this petition to transfer, contending that the Court of Appeals majority erred when it concluded that an employee with a contract terminable at will does not have the right to bring a cause of action for tortious interference with his employment relationship. Our resolution of this issue makes it unnecessary to consider appellant's other claims of error.
It is well settled that intentional interference with a contract may be an actionable tort. This doctrine is recognized virtually everywhere as to any contract, regardless of its character. Prosser, Law of Torts § 129 at 930 (4th ed. 1971). As noted above, however, Indiana courts have held that contracts involving at will employment relationships cannot form the basis of a claim for interference with a contractual relationship. Bochnowski, 530 N.E.2d at 126, Stanley, 422 N.E.2d 663. In Stanley
the Court of Appeals stated:
Where there is no promise on the part of the employer that employment will continue for a definite period of time and no binding promise on the part of the employee that he will continue in the employment, the employment relationship is terminable at will and, therefore, the contract of employment is unenforceable with respect to that which remains executory. Shaw v. S.S. Kresge Co. (1975) 167 Ind. App. 1, 328 N.E.2d 775. Such a contract, terminable at will, cannot form the basis of an action for interference with a contractual relationship. Grimm [v. Baumgart], supra [(1951), 121 Ind. App. 626], 96 N.E.2d 915 at 918.
Stanley, 422 N.E.2d at 667 (footnotes omitted). This reasoning has been rejected by the vast majority of states. See e.g., Lewis v. Oregon Beauty Supply Co. (1986), 302 Or. 616, 733 P.2d 430, Elbe v. Wausau Hospital Center, 606 F. Supp. 1491 (W.D. Wis. 1985), Smith v. Klein (1985), 23 Ohio App.3d 146, 492 N.E.2d 852, Bachand v. Connecticut General Life Ins. Co., 101 Wis.2d 617, 305 N.W.2d 149. We likewise reject this reasoning.
The parties in an employment at will relationship have no less of an interest in the integrity and security of their contract than do the parties in any other type of contractual relationship. The United States Supreme Court recognized this as far back as 1915, stating:
The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employe[e] has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will.
Truax v. Raich, 239 U.S. 33, 38, 36 S.Ct. 7, 9, 60 L.Ed. 131, 134 (1915). The overwhelming majority of cases agree with the statement that, until a contract terminable at will is terminated, it constitutes a valid and subsisting agreement that is presumed to continue in effect. Prosser, § 129 at 932-33. While a party to an at will contract may have a right to terminate the contract, "[u]ntil he has so terminated it, the contract is valid and subsisting, and the *285 defendant may not improperly interfere with it." Restatement (Second) Torts § 766 comment g (1979). Thus any intentional, unjustified interference with such a contract by third parties is actionable.
The mere label "contract terminable at will" presupposes that the durational element of the contract has been left open. This open-endedness, however, does not affect the legitimacy of the agreement itself or the amount of protection available to employees against interference by third parties. Lewis, 733 P.2d 430. An employee with an at will employment contract must be able to expect that his continued employment depends on the will of his employer and not upon the whim of a third party interferer. We therefore conclude that a claim for tortious interference with an employment relationship can be maintained upon a contract terminable at will. The plaintiff bringing such an action, however, must be prepared to show that the defendant interferer acted intentionally and without a legitimate business purpose.
A review of the trial court record in this case compels us to find that the trial court's decision to grant appellees' Motion for Summary Judgment was inappropriate. The trial judge improperly weighed the evidence in concluding that there was no genuine issue as to any material fact. Summary judgment should not be granted when it is necessary to weigh the evidence. Central Realty, Inc. v. Hillman's Equipment, Inc. (1969), 253 Ind. 48, 246 N.E.2d 383. Appellant's affidavit, filed contemporaneously with his Memorandum in Opposition to Defendant's Motion for Summary Judgment, presents an account of the events surrounding his discharge that differs with the account provided by the depositions of appellees. This conflict presents a genuine issue as to certain material facts.
Further, there are disputes as to the inferences to be drawn from several undisputed facts. Summary judgment is inappropriate where the undisputed facts themselves give rise to conflicting inferences which would alter the outcome. Woodward Ins. Inc. v. C.M. White (1982), Ind., 437 N.E.2d 59. Vernon Lee, for example, stated in his deposition that he and David Bochnowski discussed the resolution of the litigation between Peoples Federal and appellant. Subsequent to such discussions, Lee suggested to appellant that he get together with various members of the Board of Directors of Peoples Federal and attempt to resolve the matter amicably. After these efforts failed, Lee issued his ultimatum to appellant to either resolve the matter or go elsewhere. David Bochnowski was present at the meeting when Lee issued this ultimatum. Various inferences could be drawn from these undisputed facts, as a reasonable trier of fact could find evidence of a claim for tortious interference with appellant's employment contract.
Appellant's complaint alleged that Peoples Federal tortiously interfered with his employment relationship with Vernon Lee and Associates by threatening Lee with the loss of business and other unknown sanctions unless appellant settled his lawsuit with Peoples Federal. The attempt to force settlement of litigation by inducing a litigant's employer to terminate him if he does not settle the pending litigation does not constitute a legitimate business purpose which would justify interference with appellant's employment contract. Therefore, these allegations, if supported by sufficient evidence, constitute a tortious interference with an employment relationship.[*] Here, as previously stated, various inferences can be drawn from the undisputed facts presented to the trial court. Among these inferences is that Peoples Federal interfered with appellant's employment relationship without a legitimate business purpose. Thus, summary judgment was inappropriate where material facts were in dispute and various inferences could be drawn from certain undisputed facts.
Accordingly, we now grant transfer. The Court of Appeals opinion reported at *286 530 N.E.2d 125 is hereby vacated, the summary judgment entered in favor of Peoples Federal Savings and Loan Association and its Board of Directors and against Thomas Bochnowski is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.
DICKSON and KRAHULIK, JJ., concur.
SHEPARD, C.J., concurs and dissents with separate opinion, in which GIVAN, J., joins.
SHEPARD, Chief Justice, concurring and dissenting.
I agree with the majority's definition of the tort of interference with a contract. One who intervenes in the business relationship of others without a legitimate business purpose may be liable even when the nature of the business relationship is employment at will. Applying that law to this case, however, I think Peoples Federal Savings & Loan was entitled to summary judgment.
Peoples lost an employee, Thomas Bochnowski, who joined in a competing insurance and appraisal business and also undertook appraisal work for Vernon Lee and Associates. This appraisal work gave Thomas Bochnowski continuing access to Peoples' customer list. Peoples already had reason to think that Bochnowski had his eye on its customers; it had initiated litigation in state court to enforce an agreement not to compete. Bochnowski had sued Peoples in federal court seeking compensation. Bochnowski relatives sued Peoples on related grounds.
Faced with this situation, Peoples had several choices: (1) ask Vernon Lee to restrict Bochnowski's access to its customer information by assigning other appraisals to its account, (2) protect its customer list by ceasing to do business with Vernon Lee and Associates, or (3) do nothing, suffering whatever adverse competitive consequences might flow from allowing a competitor to have continuing access to its customer list. Peoples chose the first of these alternatives.
I think Peoples had a right to protect its customer list and that its decision to ask Vernon Lee to assure that Bochnowski did not have access to it served a legitimate business purpose. This seems like a decent and restrained approach, and Vernon Lee agreed to it. When Peoples discovered that Vernon Lee was again assigning Bochnowski to Peoples' appraisals, however, Peoples went to Vernon Lee to complain. It was after this complaint that Lee decided to terminate Bochnowski. Lee testified that this was his decision, that no one had threatened him or coerced him into taking this course of action, and that had anyone done so he would have told them to "drop dead." The evidence presented by Peoples in support of its motion for summary judgment thus indicates that Peoples acted with restraint and never demanded that Lee do anything other than protect Peoples' legitimate interest in its customer list.
In response to Peoples' motion, Bochnowski could not merely "rest upon the mere allegations or denials of his pleadings." Ind.Trial Rule 56(E). He was obligated to respond with opposing affidavits "made on personal knowledge" setting forth "such facts as would be admissible in evidence" and show that the affiant would be competent to testify about these facts at trial. Id. Bochnowski fails this test under T.R. 56(E). In opposing the evidence submitted by Peoples, Bochnowski offered two of his own affidavits. They largely asserted facts not in contention. On the critical matters at issue, Bochnowski declared: "Vernon Lee advised Thomas Bochnowski that if he did not settle the litigation with Peoples Service Agency, then his employment with Vernon E. Lee & Associates would be terminated." This is a statement Bochnowski could not have made as a witness at trial, inasmuch as it was hearsay. Because Bochnowski's affidavit did not meet the requirements of T.R. 56(E), it cannot be considered as available to contradict Lee's own testimony. That testimony weighed on Peoples' side of the scale and should have entitled Peoples to summary judgment.
*287 In sum, I have voted to grant transfer because I agree with Justice DeBRULER's description of the tort law applicable to this case rather than with the law contained in the opinion of the Court of Appeals. I believe that under T.R. 56, however, Peoples was entitled to summary judgment, and I would affirm the trial court on that basis.
GIVAN, J., joins in this dissent, though he believes that Bochnowski's statement was not hearsay.
NOTES
[*] Peoples Federal's request that appellant not be allowed to work on appraisals assigned by Peoples Federal to Vernon Lee and Associates, so as to protect Peoples Federal's customer lists, would constitute a legitimate business purpose and would, therefore, not be tortious.