George M. REMMERS, Theresa M. Remmers, Plaintiff,

v.

REMINGTON HOTEL CORPORATION, Defendants.

No. IP 97–1887–C M/S.

United States District Court, S.D. Indiana, Indianapolis Division.

March 16, 1999.

Gregory C. Melucci, Maiello Andrews & Price L.L.P., Pittsburgh, PA, Samuel L. Bolinger, Attorney at Law, Ft. Wayne, IN, for plaintiffs.

Christopher L. Garrison, Garrison & Kiefer, Indianapolis, IN, H. Eric Hilton, Stokes & Murphy, P.C., Atlanta, GA, Arch Stokes, Stokes & Murphy, P.C., Atlanta, GA, for defendant.

## ORDER

MCKINNEY, District Judge.

This matter comes before the Court on a motion filed by defendant, Remington Hotel Corporation (the "Hotel" or "Remington"), for summary judgment against both plaintiffs, George M. and Theresa M. Remmers (the "Remmers"). The Hotel seeks judgment as a matter of law on all counts of the complaint filed by the Remmers, arguing first that the Court lacks subject matter jurisdiction because the plaintiffs have failed to allege that the amount in controversy exceeds $75,000.00, which is the jurisdictional amount required for the Court to have diversity jurisdiction under 28 U.S.C. § 1332(a). Second, the Hotel argues that the plaintiffs cannot succeed on the merits of their claims of breach of contract (Count I), quasicontract (Count II), fraud and misrepresentation (Count III), loss of consortium (Count IV), and for punitive damages (Count V). For the reason further explained below, the Court hereby **GRANTS** the motion for summary judgment on all counts of the pending complaint.

## I. FACTUAL BACKGROUND

Sometime in April of 1995, plaintiff, George M. Remmers ("Mr.Remmers"), responded to an advertisement of an employment opportunity with Remington. Pre-Summ. J. Statement, Joint Statement of Undisp. Mat. Facts, ¶ 1 ("Joint Statement"). He received a response in May of 1995, when he was contacted by Bernadette Hudson ("Hudson") from the Hotel's human relations department. Joint Statement ¶ 2. Mr. Remmers was working at the time as a general manager of a Ramada Inn located in Pittsburgh, Pennsylvania. Compl. ¶ 26. Hudson arranged for an interview with Mr. Remmers, which was held at Remington's home office in Dallas, Texas on June 30, 1995. Compl. ¶ 11; Ans. ¶ 11; Joint Statement ¶ 3. Mr. Remmers was interviewed by Mary Villareal, Sr. Vice President for Human Relations, Randy Santulli, Sr. Vice President for Operations, E.J. Schanfarber, Regional Vice President, and Lee Morton, Corporate Controller of Hotel Accounting. Joint Statement ¶ 3. Following this interview, Remington made an offer of employment

to Mr. Remmers. Compl. ¶ 14; Ans. ¶ 14, 16; Joint Statement ¶ 4.

On July 17, 1995, Remington sent Mr. Remmers a letter that included the terms of an offer of employment. Joint Statement ¶¶ 4, 5. The letter stated that it was intended to confirm the offer of a General Manager Administration position to Mr. Remmers, beginning with training at the Indianapolis Ramada Circle Inn. Joint Statement, Ex. A, Letter Dated Jul: 17, 1995 at 1. Mr. Remmers was to report to a General Manager at that location on or about July 31, 1995. *Id.* at 1. In addition, the letter specified the salary Mr. Remmers would receive ($3,269.23 per bi-weekly pay period), his probationary period (120 days), the cost and availability of insurance coverage, the Hotel's vacation policy, and the expectation that Mr. Remmers would be re-assigned within a three month period. *Id.* at 2. A "special condition" allowed Mr. Remmers one airline ticket home per month at the Hotel's expense. *Id.* The letter, which was signed by E.J. Schanfarber as Regional Vice President of Remington, indicated that it covered all the points discussed in relation to Mr. Remmers' employment with the Hotel. *Id.* To accept Remington's offer of employment as delineated in the letter, Mr. Remmers was instructed to sign page three and return it to Mary Villareal. *Id.*

The signature page included a paragraph in which Mr. Remmers acknowledged that he had read the letter and he understood its terms. *Id.* at 3. It also stated:

> I agree that neither this document nor any other communication shall bind Remington to employ me now or hereafter and that my employment may be terminated by me or Remington at any time without notice. I further agree that if my employment is terminated by Remington, it shall be without liability to me for any wages or salary, except for amounts which I have actually earned at the time of termination.

Joint Statement, Ex. A at 3. Mr. Remmers signed this page on July 18, 1995 and

returned it to Remington. *Id.* Similar language included in the body of the letter stated that "All employees of Remington are employees at will, and as such, are free to resign at any time without reason." *Id.* at 2. Mr. Remmers was also informed that Remington retained the right to terminate an employee with or without a reason at any time, and that the letter was not to be considered as a "contract of employment or a guarantee that employment ... will be continued for any period of time." *Id.*

Mr. Remmers' employment with the Hotel began on August 14, 1995, at which time he received a copy of the Hotel's Employee Handbook. Joint Statement, ¶¶ 6, 7. He signed a statement acknowledging his understanding of the policies in the Handbook. *Id.* ¶ 8, Ex. B. The Handbook contained a separate section in the introduction entitled, "Employment At Will," in which was explained that all employment at the Hotel was on an "at will" basis. Def's Ex. D, Remington Employee Handbook, Introduction. It also specifically stated that unless a written document, signed by the company president and the employee, stated the opposite, the terms and benefits described in the Handbook may be changed by the Hotel at any time without notice. *Id.* In addition, the Handbook stated that it was being presented only for information purposes, and that it was "not intended to create, nor ... be construed to constitute a contract, expressed or implied, between Remington or its Hotel and any of its employees." *Id.* The last paragraph of the "Employment At–Will" section provided that the Handbook was the "entire written agreement between the Employer and the employee with respect to all employment being on an at-will basis. There are no oral or collateral agreements of any kind." *Id.*

Subsequently, in October of 1995, Mr. Remmers was offered a General Manager position at Remington's Beverly Hills hotel property, which he refused to accept. Compl. ¶ 34; Ans. ¶ 34. According to Mr. Remmers, he declined the position because

there would be no increase in salary. Compl. ¶ 34. Mr. Remmers' employment with Remington was terminated sometime in December 1995, with his last day as an employee being December 31, 1995. Joint Statement ¶ 10. He filed this action on November 26, 1997, claiming that the written letter offering employment to him was an employment agreement for a period of at least one year. By terminating his employment in less than one year, Mr. Remmers contends, the Hotel breached the employment contract. He also claims that he provided the Hotel with "substantial benefits in addition to the services for which [he] was hired to perform, and the Defendant accepted said benefits and services." Compl. ¶ 29. Mr. Remmers asserts that in reliance on the alleged benefits and employment promised to him, he resigned his former position "as General Manager of the Ramada Hotel in Pittsburgh," relocated to Indianapolis, Indiana, sacrificed benefits from his former position and conferred services and benefits on the Hotel other than those he was required to perform. Compl. ¶ 36.

In addition, Mr. Remmers alleges that the statements made to him by Hudson and others during his negotiations with Remington for a position constituted fraud and misrepresentation, because Remington "knew or should have known that the Plaintiff would be induced to act." Compl. ¶ 38. Theresa M. Remmers ("Mrs.Remmers") claims that "as a direct and proximate result of the aforesaid negligence of the Defendants [sic], the wife-Plaintiff has suffered" injuries and damages, including emotional and mental pain, and loss of companionship, aid, affection and consortium of her husband. Id. ¶ 44. Both of the Remmers, claiming that Remington's conduct constituted "outrageous, wilful and wanton conduct ... with reckless indifference to the Plaintiffs," demand punitive damages in the amount of $50,000.00.

Remington filed the current motion on July 22, 1998, to which the Remmers responded on August 14, 1998, and Remington replied on August 27, 1998. Subsequently, the Remmers filed a motion to compel discovery, which the Court finds is now moot as a result of its decision on the summary judgment motion. The matter is now ready for resolution, to which the Court now turns.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is material only if it might affect the outcome of the suit in light of the substantive law. *Id.*

The moving party has the initial burden to show the absence of genuine issues of material fact. *See Schroeder v. Barth*, 969 F.2d 421, 423 (7th Cir.1992). This burden does not entail producing evidence to negate claims on which the opposing party has the burden of proof. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n. 3 (7th Cir.1994). The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 360 (7th Cir.1992). The opposing party must "go beyond the pleadings" and set forth specific facts to show that a genuine issue exists. *See Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied*, 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). This burden cannot be met with conclusory statements or

speculation, *see Weihaupt v. American Med. Ass'n,* 874 F.2d 419, 428 (7th Cir. 1989), but only with appropriate citations to relevant admissible evidence. *See* Local Rule 56.1; *Brasic v. Heinemann's Inc., Bakeries,* 121 F.3d 281, 286 (7th Cir.1997); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923–24 (7th Cir.1994). Evidence sufficient to support every essential element of the claims on which the opposing party bears the burden of proof must be cited. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a summary judgment motion, a court must draw all reasonable inferences "in the light most favorable" to the opposing party. *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir. 1992). If a reasonable factfinder could find for the opposing party, then summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992). When the standard embraced in Rule 56(c) is met, summary judgment is mandatory. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Shields Enters.,* 975 F.2d at 1294.

## B. Breach of Contract

■ Employment relationships in Indiana fall into one of two categories: 1) employment for a definite term; or 2) employment at-will. *Orr v. Westminster,* 689 N.E.2d 712, 717 (Ind.1997). For those falling in the former category, "the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement." *Id.* If such a contract is terminated earlier and without cause, the employer will incur liability for breach of contract. *Speckman v. City of Indianapolis,* 540 N.E.2d 1189, 1192 (Ind.1989). The latter category is characterized by the fact that the employment agreement is "terminable at will," which means the durational element of the contract has been left open. *See Bochnowski v. Peoples Fed. Sav. & Loan Assoc.,* 571 N.E.2d 282, 284

(Ind.1991). Such an employment relationship is presumed to be terminable by either party for any reason at any time. *Orr,* 689 N.E.2d at 717. Either type of employment relationship is considered to be contractual, with the primary difference being the element of duration. *Id.* ("employment at-will doctrine is a rule of contract construction, not a rule imposing substantive limitations on the parties' freedom to contract."); *see also Bochnowski,* 571 N.E.2d at 284 (explaining that employment at-will relationship is legitimate contract subject to tortious interference claim).

■ When an employer agrees to employ a person for an indefinite period of time, it is presumed to be at-will employment, but the presumption may be rebutted. *Id.* The Supreme Court of Indiana recognizes only three circumstances under which the presumption is rebutted. *Id.* First, if the employee establishes that "adequate independent consideration" was given for a definite term, the employer may only terminate the employment for good cause. *Orr,* 689 N.E.2d at 718. Second, if the discharge violates or contravenes a clear statutory expression of a right or duty the employer may incur liability under the "public policy exception" to the at-will doctrine. *Id.* Finally, the Court recognizes an exception under the theory of promissory estoppel, if the employee asserts the doctrine with particularity. *Id.* Specifically, the employee must assert and provide evidence that the employer made a promise to him or her, that the employee relied on that promise to his or her detriment, and that injustice can be avoided only by enforcing the promise. *Id.; see also Jarboe v. Landmark Comm. Newspapers,* 644 N.E.2d 118, 121 (Ind. 1994).

■ In his opposition to the summary judgment motion, Mr. Remmers advances two main arguments to defeat the Hotel's contention that his employment was for an indefinite period of time and therefore at-will. First, he asserts that the July 17, 1995, letter represented a "bargained for"

employment contract for a minimum one-year period of employment. Brf. in Oppos. to Def's Mot. for Summ. J. at 3. In support of this assertion, Mr. Remmers argues that he negotiated for specific terms in the agreement, such as a higher salary, that the Hotel's right to discharge him was limited, and that the negotiated agreement was supported by consideration. *Id.* Second, he maintains that Remington and its agents misrepresented the terms of his employment during the contract formation period, and that he relied on the misrepresentations by relocating to Indianapolis and beginning performance of the contract, both of which bind the Hotel to the contract as it was represented to him.

The only evidence submitted by the plaintiffs to support these arguments, and oppose the summary judgment motion, is the July 17, 1995, letter. The Court first notes that when a summary judgment is made and supported by evidence, an opposing party must "go beyond the pleadings" and set forth specific facts with appropriate citations to relevant admissible evidence to successfully show a genuine issue for trial. *See Hong,* 993 F.2d at 1261; *Brasic,* 121 F.3d at 286. Mr. Remmers has not complied with these requirements, nor has he included any affidavits, depositions, answers to interrogatories, or admissions in support of the factual assertions in his brief. *See* Fed.R.Civ.P. 56(c). Given these procedural irregularities and the lack of proffered evidence, the Court is left with analyzing the Remmers' claimed issues with reference only to the letter and the Hotel's evidence.

Although it is difficult to discern the precise contours of the Remmers' theories of liability, it appears that they alternatively argue that the July 17, 1995, letter represents a written contract with a definite ascertainable term of one year, or that it is an at-will agreement that can be rebutted. With respect to the first, the Court cannot agree that the letter constitutes a written agreement of employment for a definite

term. The only evidence designated by Mr. Remmers to support this contention is the letter itself, which contains the statement that "nothing in this letter ... is intended to be, nor should be construed as a contract of employment or a guarantee that employment ... will be continued for any period of time." Plfs' Ex. A, Letter of July 17, 1995.

Referring to this cautionary language, Mr. Remmers argues that "Remington cannot hide behind boilerplate language in a contract when the Plaintiff has provided substantial consideration in the formation as well as negotiated agreed-to terms of an employment arrangement with the Defendant." *Id.* He cites no cases or other authority in support of this contention, and the Court will not accept it as an accurate statement of the law. Instead, the Court finds that the quoted language, located on the second page of a two page letter, written in terms understandable by the average lay-person, in legible print that is the same size as all·other print in the letter, and that is not ambiguous, is sufficient evidence to support the Hotel's contention that the contract did not contain a definite durational term. Thus, the employment relationship documented in the July 1995 letter is presumed to be based on an at-will agreement.

█ In his brief, Mr. Remmers also alludes to the fact he was offered an annual salary of $85,000.00 as evidence that a one year period was contemplated for his initial employment contract. Mem. in Oppos. at 4. However, at no point in the letter is there a reference to an "annual salary," and the description of the bi-weekly amount alone could not supply any certainty that the employment was to be for a year. Even if there were a reference to an annual salary in the letter, Indiana law does not allow a court to infer a contract for an annual term simply from the salary quote or description. *See Whiteco Indus., Inc. v. Kopani,* 514 N.E.2d 840, 848 (Ind. Ct.App.1987); *Ewing v. Board of Trustees,* 486 N.E.2d 1094, 1098 (Ind.Ct.App.1985)

(holding that a statement of a rate of pay is not a statement of duration of employment). The Court is unpersuaded that the description of salary to be paid Mr. Remmers can be construed as supplying the missing durational term.

■ Mr. Remmers' other arguments appear to be attempts at rebutting the presumption of application of the at-will doctrine to the employment relationship between himself and the Hotel. First, he suggests that "adequate independent consideration" was given in exchange for the Hotel limiting its right to terminate the relationship at any time and without cause. The "limitation" to which he refers can be found in the letter's description of the probationary period. Mem. in Oppos. at 6. Specifically, the letter states, "You will be hired on a 120 day probationary period. Upon completion of the probationary period, *continued employment is contingent upon commendable performance.*" Plfs' Ex. A (emphasis added). Mr. Remmers argues that his performance was commendable at all times, although he cites no evidence to support this assertion, and that the Hotel was in breach of this contract provision for terminating his employment before the end of the probationary period. The Court does not interpret the cited language as Mr. Remmers suggests, that the Hotel limited its right to terminate Mr. Remmers as long as he provided "commendable performance." Rather, it appears more likely that commendable performance was a condition of any continuation of his employment after the probationary period. It placed an obligation on Mr. Remmers, not on the Hotel.

In arguing that the emphasized language quoted above functions as a limitation of the employer's right to discharge him, Mr. Remmers demonstrates a fundamental misunderstanding of the at-will doctrine. Such language cannot rebut the presumption that an employment agreement for an indefinite term can be terminated at any time for any reason, by either party to the agreement. Moreover, when construed with the other language of the letter, specifically the language stating that the letter is not a guarantee of employment for any period of time, this argument is further weakened. The Court does not find that the cited language constitutes a limitation on the Hotel's right to discharge Mr. Remmers at any time for any reason, and thus the at-will presumption is not rebutted.

■ Even if it could be so construed, the law requires that the limitation be supported by adequate, independent consideration. Mr. Remmers claims that he provided adequate, independent consideration in that he "forfeited a substantial position as a General Manager of a major hotel in Pittsburgh" to move to Indianapolis and accept a position with the defendant. Several Indiana courts have addressed the type of independent consideration needed to rebut the presumption of at-will employment. For example, an employee gives "independent consideration" when he or she releases the employer from liability for some personal injury inflicted in the past. *See Ohio Table Pad Co. of Ind., Inc. v. Hogan,* 424 N.E.2d 144, 146 (Ind.Ct.App. 1981). Other examples include, releasing the employer from liability for all claims of wrongful discharge arising from a prior incident, *Speckman,* 540 N.E.2d at 1192, surrendering a valuable coal lease to the employer in exchange for employment, *Mt. Pleasant Coal Co. v. Watts,* 91 Ind.App. 501, 151 N.E. 7 (1926), or entering a settlement agreement for past litigation in which the employer agrees not to retaliate against the employee, *Department of Nat'l. Res. v. Evans,* 493 N.E.2d 1295, 1302 (Ind.Ct.App.1986).

What has been repeatedly and specifically rejected by Indiana courts as a source of independent consideration is the fact that the employee resigned his or her former position or relocated to accept the new position. *Orr,* 689 N.E.2d at 718 (citing *Wior v. Anchor Indus., Inc.* 669 N.E.2d

172, 173–77 (Ind.1996)). However, that type of conduct has been accepted as adequate independent consideration "when, for example, the employer is aware that the employee had a former job with assured permanency ... and the employee was only accepting the new job upon receiving assurances the new employer could guarantee similar permanency." *Id.* (quotations omitted).

Mr. Remmers does not allege, much less provide any evidence from which to prove, that his former position was one with "assured permanency," or that it had any type of limitation on the employer's right to discharge him. He also has presented no evidence that the Hotel was aware of any permanence of his prior position. Nor is there evidence that his relocation to Indianapolis represented any kind of "different and substantial detriment" that might entitle Mr. Remmers to prove it was independent consideration for a fixed term of employment with the Hotel. *See Whiteco*, 514 N.E.2d at 844. Ordinarily, the actions of resigning a former position and moving to a new location are "considered as merely placing the employee in a position to accept the employment." *Id.* For these reasons, the Court finds that Mr. Remmers has failed to provide sufficient evidence from which to prove that he gave adequate independent consideration for a one year contract of employment. Instead, the evidence presented amply supports a finding that his employment agreement with the Hotel was terminable at the will of either party, for any reason and at any time. The Court will address Mr. Remmers' second main argument, regarding alleged misrepresentations, in part D.

## C. Quasi–Contract

■ Count II of the complaint is designated as a claim of quasi-contract. Mr. Remmers alleges that he accepted an offer of employment from the Hotel, thereby giving up his prior position and benefits, relocating to a new area, and traveling back and forth, in reliance on certain representations made to him during his interviews and while he was employed. Compl. ¶¶ 28–36. Further, he alleges that he relied on those representations to his detriment, which he described in terms of resigning his former position, relocating, sacrificing "secured medical, insurance and retirement benefits," and conferring on the Hotel "other substantial benefits ... other than those he was required to perform." *Id.* ¶ 36. As a result of his "detrimental reliance," Mr. Remmers claims to have suffered damages. *Id.*

■ Quasi-contract is a legal fiction, a theory of recovery that allows courts to render a decision to avoid "unjust enrichment" of one party at the expense of another. *See Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992); *Wright v. Pennamped,* 657 N.E.2d 1223, 1229 (Ind.Ct.App.1995). In *Sonnenburg,* the Indiana Supreme Court noted that "quasi-contracts are to be distinguished from both express and implied in fact contracts, which are traditional contracts. The matter is the subject of some confusion." *Sonnenburg,* 573 N.E.2d at 408, n. 11. Mr. Remmers seems to have been confused. To state a claim of unjust enrichment, the plaintiff must "establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Id.* at 408. It is an equitable remedy used by courts to promote justice and equity. *Wright,* 657 N.E.2d at 1229.

In the case at hand, Mr. Remmers has not alleged that he conferred a benefit on the Hotel for which it did not pay. He suggests in the allegations of his complaint that he conferred "substantial benefits" beyond those he was required to confer by virtue of his employment. Yet at no point has he described, let alone supported with evidence, the other benefits that were conferred. Nor has he provided any evidence, or even alleged, that the Hotel obtained any benefits from him for which it did not

pay. For these reasons, Mr. Remmers has failed to state or support a claim based on quasi-contract.

Certain aspects of the allegations of the complaint suggest that Mr. Remmers may have intended to present a claim under the theory of promissory estoppel. For example, he described his reliance on the Hotel's representations as "detrimental reliance," a term of art used in cases dealing with promissory estoppel and constructive fraud. In support of this type of claim, Mr. Remmers notes a case in which the court wrote that if "one party to the agreement acts upon the promise of the other party and performs his part of the agreement, the contract is not unenforceable for lack of mutuality." *Marksill Specialties, Inc. v. Barger*, 428 N.E.2d 65, 69 (Ind.Ct. App.1981). That statement, however, was made in the context of determining whether one party was obligated to pay commission to the other for services rendered by the other prior to his employment. *Id.* at 67. Moreover, it is nothing more than a generalized statement of the theory behind promissory estoppel, which has been further explained in more recent cases.

The Supreme Court of Indiana has acknowledged a "limited application of the doctrine of promissory estoppel in claims for damages resulting from a plaintiffs' detrimental reliance on a defendant's promise of employment." *Jarboe*, 644 N.E.2d at 121. As noted in part B, this theory provides one of the exceptions to the employment at-will doctrine. The doctrine of promissory estoppel provides:

> A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by the enforcement of the promise. The remedy for breach may be limited as justice requires.

■■■ *Jarboe*, 644 N.E.2d at 121. Indiana courts have limited the remedy to reliance damages, and not allowed expectation damages, when the doctrine is being used to support converting an at will employment agreement to one for a definite term. *Id.* at 122 (citing *D & G Stout, Inc. v. Bacardi Imports, Inc.*, 923 F.2d 566, 569 (7th Cir.1991) with approval). Specifically, the Indiana Supreme Court has stated, "[t]he doctrine of promissory estoppel may be available to an at-will employee, but the remedy is limited to damages actually resulting from the detrimental reliance and will not include the benefit of altering the employment status from an at-will relationship to a permanent one which requires cause for termination." *Id.*

Mr. Remmers has not identified in his allegations or any supporting evidence a promise from the Hotel of anything more than what he received—employment for an indefinite period. In addition, his detrimental reliance is nothing more than taking the steps necessary to accept the offer of employment. There is no evidence that he relinquished a permanent employment position for the one he accepted from the Hotel, nor is there evidence that he conferred any benefit on the Hotel to his own detriment in reliance on some promise of permanent employment. Even if there were sufficient evidence from which to infer a detrimental reliance, Mr. Remmers has offered no evidence to support a finding of any reliance damages. For all of these reasons, his promissory estoppel theory will not avail.

### D. Fraud and Misrepresentation

■■■ "Intentional fraud occurs when there is 'a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, and the misrepresentation [is] relied upon to the detriment of the relying party.'" *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 675 (Ind.1997) (citing *Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E.2d 1054, 1058 (Ind.1992); *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind.1996)). Constructive fraud, on the other hand, is found when there is a duty

owed by the promisor to the promisee, and the promisor makes a false material misrepresentation of past or existing facts to the promisee, who relies to his detriment, which reliance creates an advantage for the promisor. *See Rice v. Strunk,* 670 N.E.2d 1280, 1284 (Ind.1996); *Jarboe,* 644 N.E.2d at 122 n. 2 (citing *Romack v. Public Serv. Co. of Ind.,* 499 N.E.2d 768, 778–79 (Ind.Ct.App.1986)) (Conover, dissenting) (adopted by Indiana Supreme Court in *Romack v. Public Serv. Co. of Ind.,* 511 N.E.2d 1024 (Ind.1987)). The Supreme Court distinguished constructive fraud from promissory estoppel in *Jarboe,* stating that for an action based on constructive fraud, the plaintiff must prove a "false material promissory representation," not just a promise that was broken. *Jarboe,* 644 N.E.2d at 122–23 n. 2.

■ Mr. Remmers claims in this fraud and misrepresentation claim that Remington misrepresented the terms of his employment, but then characterizes those "misrepresentations" as promises. It is not clear whether Mr. Remmers is attempting to prove promissory estoppel, intentional fraud, or constructive fraud. What is clear, however, is that he has offered no proof of any promises or representations, false or otherwise, that would entitle him to go to trial on the issue of fraud, misrepresentation, or constructive fraud. The most specific allegation he presents is that he was promised a position as a general manager at one of Remington's hotels in Indianapolis, Indiana or Ft. Worth, Texas, and that Remington was in the process of negotiating a transaction with Servico Corporation, by which it would obtain numerous additional hotels. Subsequently, Mr. Remmers began employment in Remington's Indianapolis hotel and learned that a new general manager had already been hired, after which he was offered a position at a hotel in Beverly Hills that he declined. Next, the deal with Servico Corporation fell through, which eliminated Remington's anticipated need for additional general managers, following which Mr. Remmers' employment was terminated.

■ For these facts to constitute proof of fraud, Mr. Remmers must supply evidence that the representations, when made, were false. He has offered no such proof. Instead, he has focused his attention on the fact that the things Remington represented would happen in the future, did not. An action for actual fraud cannot be based on the failure of such expectations, when the person making the representations did so believing them to be true. *See Blaising v. Mills,* 176 Ind.App. 141, 374 N.E.2d 1166, 1169 (1978) (noting that fraud cannot be based on promises to be performed in the future). It is the truthfulness of the representations at the time they are made that governs the determination of whether the conduct was fraudulent. *Id.* Absent evidence that would show Remington's agents knew, at the time they allegedly represented that the company would need many general managers in the near future, that it would not, Mr. Remmers' claim of fraud and fraudulent misrepresentations must fail.

■ With respect to a possible claim of constructive fraud, Mr. Remmers has likewise failed to provide any evidence of a *false* material promise on which he relied to his detriment and Remington's benefit. Unlike actual fraud, with constructive fraud the plaintiff need not prove an intent to deceive. *Wright,* 657 N.E.2d at 1233. "Instead, the law infers fraud from the relationship of the parties and the surrounding circumstances." *Id.* The relationship element can be satisfied with proof of a fiduciary or confidential relationship between the parties, *Hardy v. South Bend Sash & Door Co.,* 603 N.E.2d 895 (Ind.Ct.App.1992), with proof of some other special relationship that would impose an added duty, *Comfax v. North Am. Van Lines,* 587 N.E.2d 118 (Ind.Ct.App.1992), or when circumstances exist that are "so likely to result in injustice that the law will find a fraud despite the absence of fraudulent intent." *Wright,* 657 N.E.2d at 1233.

Here, Mr. Remmers alleges promises that were made to him during his interviews for employment with Remington, and his reliance on those promises, which reliance he claims was detrimental. However, these alleged promises were made during an arms length transaction in which Mr. Remmers demonstrated his ability to bargain for terms favorable to himself. Moreover, Mr. Remmers claims to have had a "substantial position" as a general manager of a major hotel in Pittsburgh prior to accepted the position with Remington. Presumably, someone with that type of experience would be familiar with the hotel industry, and its business practices, and would not be at the mercy of Remington's agents for such information. Under these circumstances, the Court finds no special relationship that would give rise to an added duty owed by Remington to Mr. Remmers, that could be breached by making promises that might induce his reliance and provide a corresponding gain to Remington.

■ Even if such a duty existed, Mr. Remmers has failed to present any evidence of the alleged promises, other than the allegations of his complaint and the assertions in his brief. Moreover, his allegations that he was promised a full-service general manager position at either the Indianapolis or Fort Worth hotels, that Remington was purchasing Servico Corporation, that within three months he would be re-assigned to a full service hotel, that his refusal to accept reassignment would not jeopardize his position with the company, that his diabetic son would be covered under Remington's health insurance policy, and that he would be employed for a minimum of one year, are negated by the contents of the July 17, 1995, letter. In that letter, Remington's regional vice president wrote, "I believe this covers all the points we discussed concerning your employment with Remington." Plfs' Ex. A. To indicate his agreement that all points were contained in the letter, and to accept the offer of employment as stated in the

letter, Mr. Remmers was asked to sign the third page of the letter. *Id.* Not only did he do so, but he did not ask any questions about the matters he now claims were promised to him that were not contained in the letter. Nor did he make any changes to the letter to indicate his understanding of the agreement. Instead, he merely signed the acknowledgment and returned it by the requested date. In light of these facts, the Court is not persuaded that circumstances exist that would create an injustice if the law does not find a fraud.

### E. Loss of Consortium

Mrs. Remmers has presented a claim that because of Remington's "negligence" she has suffered emotional and mental pain, anguish, humiliation, depression, anxiety, the loss of companionship, aid, affection and consortium of her husband, and has incurred medical expenses for the treatment of these conditions. Compl. ¶ 44. These are classic components of damages in loss of consortium claims, which are typically available to the spouse of a person who has suffered personal injury at the hands of a defendant. *See Troue v. Marker,* 253 Ind. 284, 252 N.E.2d 800, 805 (1969). Ordinarily such claims are asserted against a defendant who has taken some tortious action against the claimant's spouse. *Id.* (holding that loss of consortium claim is available to wife when husband suffers negligent injury). Mrs. Remmers has designated the source of the wrong for which she seeks recovery as defendant's negligence, which the Court presumes to mean the defendant's alleged constructive fraud.

■ Under Indiana law, loss of consortium claims are derivative from the spouse's underlying claim, in that, if the underlying claim cannot be proven, then the loss of consortium claim fails. *See England v. Thermo Products, Inc.,* 956 F.Supp. 1446, 1456–57 (N.D.Ind.1996). Because the Court has found that Mr. Remmers failed to provide sufficient evidence to create a genuine issue of material

fact, defeating his claims, Mrs. Remmers' loss of consortium claim will likewise fail. Remington is entitled to judgment as a matter of law on this count of the complaint.

### F. Punitive Damages

■ In 1993, the Indiana Supreme Court clarified the role of punitive damages in breach of contract claims. *See Miller Brewing Co. v. Best Beers,* 608 N.E.2d 975 (Ind.1993). The general rule is that punitive damages are not allowed in an action for breach of contract. *Id.* at 981. There are no exceptions to this rule. *Id.; but c.f. Erie Ins. Co. v. Hickman,* 622 N.E.2d 515 (Ind.1993) (in insurance contract context, recognizing independent tort for breach of insurer's duty of good faith, on which punitive damages claim can be based). In prior cases, courts had entertained claims for punitive damages in breach of contract cases when the breach was "tortlike." *Id.* at 982. The Supreme Court explained that this notion had only arisen in *dicta* and that a plaintiff may not assert a claim for punitive damages unless he or she pleads and proves the elements of an independent, recognized tort, of the kind for which punitive damages would be allowed under Indiana law. *Id.* at 983–84.

Here, the Remmers have asserted a punitive damages claim because the conduct described in the complaint was "outrageous, willful and wanton," and undertaken with "reckless indifference to the Plaintiffs." Compl. ¶ 46. In light of *Miller Brewing,* the only conduct for which the Remmers could claim punitive damages would be the alleged fraud and misrepresentation. The Court has already found that there is no evidence to support any finding of intent to deceive, much less constructive fraud. It now finds there is no evidence of any outrageous, willful, or wanton conduct, or even conduct that demonstrated a reckless indifference to the Remmers. Thus, Remington is entitled to summary judgment on Count V as well.

### III. CONCLUSION

The Court has found that the Remmers have failed to produce sufficient evidence to create a genuine issue of material fact in their claims of breach of contract (Count I), quasi-contract (Count II), fraud and misrepresentation (Count III), loss of consortium (Count IV), and for punitive damages (Count V). For the reasons provided herein, the Court **GRANTS** the defendant's motion for summary judgment on all counts of the complaint. This decision also resolves the Remmers' pending motion to compel discovery, which has been rendered moot.